Jack GILPIN, et al.,
Plaintiffs–Appellants,

v.

AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL–CIO, et al., Defendants–Appellees.

No. 88–2441.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 17, 1989.

Decided May 24, 1989.

Milton L. Chappell, Staff Atty., National Right to Work Legal Defense Foundation, Inc., Springfield, Va., for plaintiffs-appellants.

Craig Becker, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before WOOD, Jr., POSNER, and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

A union that has been certified as the exclusive bargaining representative for a group of employees must represent every employee in the bargaining unit, even those who don't belong to the union. Correlatively, the union is entitled to charge the nonmembers their pro rata share of the expenses that it incurs in negotiating for and administering the collective bargaining agreement, and to ask the employer to

deduct this pro rata share from the non-members' wages. But if the union goes further and makes the nonmembers pay either the full union dues or an agency fee that exceeds the collective bargaining costs fairly chargeable to nonmembers, the union —and the employer—can get into legal trouble. If the collective bargaining agreement is with a *public* employer (state or local) that deducts the union's agency fee from its employees' wages, and part of the fee is used to advance the union's *political or ideological* goals as distinct from defraying the union's expenses of negotiating and administering the collective bargaining agreement, both the public employer and the union can be held liable in a suit under 42 U.S.C. § 1983 for violating the nonmembers' right of free speech under the First Amendment (made applicable to the states by interpretation of the Fourteenth Amendment). See *Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). What is more, the First Amendment has been held to require the public employer and the union to establish efficacious procedures, including notice and right to a hearing, for determining how much of the union's proposed agency fee is proper. See *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986); *Ping v. National Education Ass'n,* 870 F.2d 1369 (7th Cir.1989).

In September 1985 nine nonunion employees of Illinois state and local agencies brought this suit against the local of the American Federation of State, County, and Municipal Employees that represents those employees in collective bargaining, and against the employers themselves. Several weeks earlier, the union had decided that for the new school year the agency fee (called "fair share fee") would be 90 percent of the union dues, and the union had so notified the employees in the bargaining unit. Shortly after filing the suit the plaintiffs moved for a preliminary injunction to prevent the deduction of the agency fee for the 1985 school year. The motion was denied and the employers proceeded to deduct the fee from the wages of the nonunion employees in the bargaining unit and to pay over the amount deducted to the union, which however placed the entire amount in an interest-bearing escrow account. Although 10,000 of the 20,000 to 30,000 employees in the bargaining unit do not belong to the union, the district judge refused to certify the suit as a class action.

After the Supreme Court decided *Hudson* in 1986, the district judge held that both the first notice sent by the union to employees regarding the "fair share fee" for the 1985 school year and the procedure that had been used to determine the fee were defective. For the 1986 school year the union sent a new notice after fixing the fee at 96 percent of the union's dues. It also asked the American Arbitration Association to appoint an arbitrator to determine the proper agency fee for both 1985 and 1986, as well as for future years. The arbitrator ruled that in 1985 the proper agency fee would have been 95 percent of union dues, so the nonmembers had gotten a bargain at 90 percent. He ruled that 95 percent was also the proper percentage for 1986, so the union had overcharged nonmembers by 1 percent that year. He directed the union to remit the 1 percent overcharge to the nonmembers from the escrow account together with the interest that had accrued in the account, and the union has agreed to do this. The nonmembers were not required to remit their 5 percent 1985 windfall. The plaintiffs in this suit were not parties to the arbitration proceeding and have not challenged the arbitrator's determinations regarding the proper agency fees for 1985 and 1986.

The district judge was dissatisfied with the 1986 notice but concluded that no harm had been done since the union had agreed to refund the overcharge to all nonmembers, whether or not they had challenged the 1986 agency fee. For the 1987 school year the union prepared a fuller notice, which the judge found adequately informative. The arbitrator has not yet ruled on the propriety of the fee that the union set for 1987 (at 91 percent of union dues), but the union has agreed to abide by whatever ruling the arbitrator makes and to refund any overcharge that he finds to all nonmembers whether or not they challenge the

ruling. On the basis of the union's undertakings and the revision of the notice, the judge decided there was no need to order any relief, and he entered judgment for the defendants.

The plaintiffs appeal, raising four issues that merit discussion: whether the judge should have certified the suit as a class action, given the large number of nonunion employees; whether he should have issued a preliminary injunction against the collection of the 1985 agency fee; whether the plaintiffs are entitled to restitution of the money deducted from their wages in 1985 and 1986, the years for which, the judge found, the union's notices were inadequate; and whether the 1987 notice was inadequate.

█ The district judge was right not to certify the suit as a class action on behalf of the 10,000 nonunion members. A potentially serious conflict of interest within the class precluded the named plaintiffs from representing the entire class adequately. See Fed.R.Civ.P. 23(a)(4); *United Independent Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1284 (7th Cir. 1985). Two distinct types of employee will decline to join the union representing their bargaining unit. The first is the employee who is hostile to unions on political or ideological grounds. The second is the employee who is happy to be represented by a union but won't pay any more for that representation than he is forced to. The two types have potentially divergent aims. The first wants to weaken and if possible destroy the union; the second, a free rider, wants merely to shift as much of the cost of representation as possible to other workers, i.e., union members. The "restitution" remedy sought by the National Right to Work Legal Defense Foundation, which represents the nine named plaintiffs, is consistent with—and only with—the aims of the first type of employee. The Foundation is seeking repayment to *all* the bargaining unit's nonunion employees of the *entire* agency fees collected by the union in the 1985 and 1986 school years (with interest), even though the Foundation has not challenged the arbitrator's determination

that the union was entitled to *more* than the amount it actually collected in 1985 and to 99 percent of the amount it collected in 1986. Not only would the "restitution" that the Foundation seeks confer a windfall on the nonunion employees but it might embarrass the union financially. Yet those nonunion employees who, while not wanting to pay more (and perhaps even wanting to pay less) than their "fair share" fees, have no desire to ruin the union or impair its ability to represent them effectively might not want so punitive a remedy. The National Right to Work Foundation is not an adequate litigation representative of those employees. Nor did it or anyone else propose that the judge certify two classes. Finally, there is little—perhaps no legitimate—need for a class action here. The union's policy is to refund any overcharges determined by the arbitrator to all nonunion members, whether or not they are parties to a judicial or arbitral proceeding; and the nonunion members are not entitled to any additional monetary remedy, as we shall see.

█ We can be briefer about the second issue. The correctness of the order denying the preliminary injunction is thoroughly moot. The plaintiffs were trying to enjoin the deduction of agency fees for 1985. The judge refused and the fees were deducted. Even the United States Court of Appeals for the Seventh Circuit cannot make time run backwards.

█ We come to the third issue, restitution. At argument we pressed the plaintiffs' counsel for an explanation of how his clients could have been hurt by the inadequate notices sent in 1985 and 1986. The arbitrator—whose decision the plaintiffs have not challenged—found that the union had undercharged the plaintiffs for 1985, and the union has agreed to refund with interest the slight overcharge that it had exacted in 1986 though never enjoyed, having placed the entire agency fee in escrow. The plaintiffs actually *benefited* from the inadequate notice. The function of the notice is to give employees who don't belong to the union enough information about the agency fee for the forthcoming year to

enable them to decide whether to challenge it. Had the plaintiffs received a fuller notice they might have mounted such a challenge. But a challenge could only have cost them; it could not have benefited them. A challenge to the 1985 fee would have been worse than futile, given the arbitrator's finding that the fee was too low, while a challenge to the 1986 agency fee would have been futile because the arbitrator ordered the tiny overcharge in that fee refunded to all nonunion employees—even those who, like the plaintiffs, did not challenge the fee, whether because the notice was inadequate or for other reasons. The plaintiffs got something for nothing, thanks in part to the defective notices of which they complain.

The plaintiffs remind us that this is a First Amendment case, so that the principle that underlies the previous paragraph—the principle that denials of due process that do no measurable harm give rise to no damages, see, e.g., *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)—may not apply. But the principle of *Carey* is not limited to due process cases. As the Supreme Court later explained in *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986), whatever the constitutional provision that is violated, there can be no award of compensatory damages if there is no harm (i.e., no loss to compensate *for*). See also *Cygnar v. City of Chicago*, 865 F.2d 827, 848 n. 21 (1989); *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 602 (5th Cir.1988). What is true is that in areas where harm occurs but is not readily monetizable, an award of general damages may be permitted, and taking away a person's right of free speech may be such a case. See, e.g., *Memphis Community School District v. Stachura, supra*, 477 U.S. at 310–11, 106 S.Ct. at 2544–45; *City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547, 1558–59 (7th Cir.1986); *Ustrak v. Fairman*, 781 F.2d 573, 578–79 (7th Cir.1986); *Parrish v. Johnson*, 800 F.2d 600, 606–07 (6th Cir. 1986). But it is still necessary to show some harm.

We can *imagine* an argument that these plaintiffs suffered harm. In 1986 their employers deducted a larger agency fee than was proper, and although the excess was placed in escrow and not used to fund the union's political activities, the plaintiffs lost the use of the money, which they might have devoted to the support of political activities of their own choosing. Whether this is a sound argument, cf. *Lowary v. Lexington Local Board of Education*, 854 F.2d 131 (6th Cir.1988), and what bearing the undercharge in 1985—which freed up funds for the plaintiffs to use on political activities if they chose, and which greatly exceeded the 1986 overcharge—should have on it, we need not consider. The plaintiffs allude to this argument in asking us to reverse the denial of their motion for a preliminary injunction but do not mention it in connection with their claim for monetary relief. Indeed, they do not seek damages. Instead they seek a remedy—restitution—that is ordinarily (although not invariably) a substitute for rather than a form of damages. See, e.g., *Patton v. Mid–Continent Systems, Inc.*, 841 F.2d 742, 748 (7th Cir.1988); Dobbs, Handbook on the Law of Remedies 224 (1973) ("The damages recovery is to compensate the plaintiff, and it pays him, theoretically, for his losses. The restitution claim, on the other hand, is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep"). For example, a copyright holder who has suffered no damages can seek restitution of the infringer's profits in lieu of damages. See 17 U.S.C. § 504; see also 15 U.S.C. § 1117 (trademark infringement). But this avenue (restitution as the remedy for unjust enrichment) is closed to these plaintiffs, not only because the defendants derived no benefit from agency fees deposited in an escrow account but also because those fees did not exceed the union's bona fide expenses on behalf of the plaintiffs and the other nonunion employees. There was no enrichment, and it was not unjust.

The plaintiffs want the entire escrow account paid over to them and the other union nonmembers even though all of the

money in it (with the exception of the 1 percent of the 1986 fee that the union has agreed to refund) is necessary—and inadequate—to defray costs properly incurred by the union in representing nonmembers in collective bargaining, and even though the union derives no benefit from agency fees held in escrow. It is a severely punitive remedy the plaintiffs seek, not one properly described as restitution at all. It would be suitable if at all only if the defendants had been guilty of willful or malicious violations of the Constitution. Yet the 1985 notice which the district judge found to be defective had been issued before the Supreme Court decided the *Hudson* case, and the 1986 notice was ten pages long and contained voluminous information concerning the agency fee. The only defect the district judge found in the 1986 notice lay in the brevity of the union's description of the procedure for challenging the agency fee. The notice stated: "AFSCME Local 2000 has established an Arbitration Procedure for resolving challenges to the amount of the Fair Share Fee. This procedure will result in expeditious decision on the challenge by an impartial decision maker. Challengers will receive further information regarding this procedure upon the union's receipt of their challenge." The notice gave an address and deadline for mailing a written challenge that "must include the challenge fair share fee payer's ('Challenger's') name, address, social security number, job title, employer and employing agency and location." The district judge thought the notice should contain more details about the arbitration procedure. Maybe so, but this is a matter of judgment and the union can hardly be thought a willful violator of the First Amendment for having guessed differently. Since to file a challenge costs only a postage stamp plus a small amount of time to supply the tiny amount of information that the challenge must set forth, one would not have thought a challenger needed a detailed prospectus of the arbitration procedure before filing.

The 1987 notice contains the following substitute paragraph, approved by the district judge, for the one we quoted from the 1986 notice:

> AFSCME Local 2000 has established an Arbitration Procedure for resolving challenges to the amount of the Fair Share Fee. This procedure will result in an expeditious decision on the challenge by an impartial decision maker. The decision maker will be an arbitrator selected by the American Arbitration Association. An arbitration proceeding will be conducted by the arbitrator pursuant to the rules of the American Arbitration Association governing fair share cases. AFSCME will have the burden of proving that the fair share fee is proper. Challengers will have a chance to appear before the arbitrator to state their objections to the fair share fee. The arbitrator will issue a decision regarding challenges to the amount of the fair share fee 30 days after submission of final arguments regarding the amount of the fee. Challengers will receive further information regarding this procedure upon the union's receipt of their challenge.

Is this an improvement? Is it the constitutional *minimum,* as the district court thought? It is more informative, but also longer and more complex. It may invite a few more challenges, but so what? The arbitrator will order a refund to all union nonmembers who are overcharged, whether or not they file a challenge; so only one challenger is necessary. And there will always be at least one whether or not the notice is informative; the National Right to Work Foundation will see to that, you can be sure.

The issue is not whether the provision regarding challenges in the 1986 notice was constitutionally inadequate—an issue no party has raised—but whether its inadequacy was so patent that the union should be punished by being deprived of millions of dollars ($6 million to be precise) to which it is otherwise lawfully entitled. We think not. The constitutional violation was a technical one at worst, and a punitive remedy is not called for. What the plaintiffs call restitution we call punitive damages, and the Supreme Court has set forth standards for the award of punitive damages in

civil rights cases that the plaintiffs have not attempted to satisfy. See *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed. 2d 632 (1983); *Soderbeck v. Burnett County,* 752 F.2d 285, 289–91 (1985); *Walsh v. Mellas,* 837 F.2d 789, 801–02 (7th Cir.1988); *Erwin v. County of Manitowoc,* 872 F.2d 1292, 1298–99 (7th Cir.1989).

Indeed, if we ordered the union to turn over the escrow account to the plaintiffs and the other nonunion employees, the *union* would have a strong claim for restitution. For the union negotiated on behalf of these employees as it was required by law to do, adjusted grievances for them as it was required by law to do, and incurred expenses in doing these things that exceeded the amount in the escrow account for 1985 and 1986. The plaintiffs do not propose to give back the benefits that the union's efforts bestowed on them. These benefits were rendered with a reasonable expectation of compensation founded on the collective bargaining agreement and federal labor law, and the conferral of the benefits on the plaintiffs would therefore give rise under conventional principles of restitution to a valid claim by the union for restitution if the union were forced to turn over the escrow account to the plaintiffs and others similarly situated to them. See, e.g., *Goldstick v. ICM Realty,* 788 F.2d 456, 467 (7th Cir.1986); Palmer, The Law of Restitution §§ 1.2, 4 (1978 and Supp. I 1984); Dobbs, *supra,* at 232–35. In claiming restitution the plaintiffs are standing that remedy on its head. This is further proof that they are seeking punitive damages by another name without having satisfied the conditions for an award of punitive damages in a civil rights case.

The last issue is whether the 1987 notice provided sufficient information regarding not the procedures for challenging the agency fee but the allocation of union expenses between agency and other accounts. The plaintiffs complain that the breakdown is not detailed enough to enable them to determine whether a challenge to the agency fee is likely to succeed. Yet the notice breaks down the union's activities into 35 categories and indicates which ones the union considers activities wholly in support of its agency mission (e.g., adjusting grievances under the collective bargaining agreement), which it considers wholly unrelated to that mission (e.g., contributing to political campaigns), and which it considers a mixture of agency and other functions (e.g., publishing a union newsletter). The notice recites that the arbitrator has found that the union's allocation of expenses in accordance with this breakdown is proper, and offers a copy of his detailed ruling for $1.50. The notice contains another list of 35 items—not the 35 separate activities that the union engages in but the 35 different types of expenditure listed in its audited financial statement (salaries and benefits, depreciation, telephone, etc.)—and indicates what percentage of each is chargeable to union nonmembers as part of the agency fee.

The plaintiffs complain that despite its detail the notice does not explain the principles under which, say, $16,788 out of a total of $17,445 for "Editorial Services" is chargeable to the agency fee portion of union dues. But if it did, the notice would be as long and complicated as an SEC prospectus. The notice indicates which activities the union considers to be wholly or partly in pursuit of its agency mission, and what percentage of each expenditure item is allocated to that mission. This should be enough information (in contrast to the notice held deficient in *Damiano v. Matish,* 830 F.2d 1363 (6th Cir.1987)) to allow the employee to decide whether there is any reason to mount a challenge. Cf. *Chicago Teachers Union v. Hudson, supra,* 475 U.S. at 306–07, 106 S.Ct. at 1075–76. Since mounting a challenge is for all practical intents and purposes free and since only one challenger is necessary to obtain a refund for all nonunion employees, we cannot see the point in requiring the union to provide even more information than the district judge required. In objecting to the notice, the plaintiffs and the National Right to Work Foundation are merely trying to hamstring the union.

The appeal is dismissed insofar as it challenges the denial of the plaintiffs' motion for a preliminary injunction. Otherwise

the judgment is affirmed.  Costs in this court to the defendants.