Marie E. DASHIELL, et al., Plaintiffs,

v.

MONTGOMERY COUNTY, et al., Defendants.

Civ. A. No. R–89–1915.

United States District Court, D. Maryland.

March 14, 1990.

Milton L. Chappell, Rossie D. Alston, Jr., Springfield, Va., for plaintiffs.

William W. Thompson, II, Michael T. Leibig, Zwerdling, Paul, Leibig, Kahn & Thompson, P.C., Washington, D.C., for defendants.

MEMORANDUM AND ORDER

RAMSEY, District Judge.

Plaintiffs, six employees of Montgomery County who are not members of the defendant union recognized by the County as their exclusive bargaining representative, bring this action pursuant to 42 U.S.C. § 1983 to vindicate their rights under the First and Fourteenth Amendments to the United States Constitution. In short, plaintiffs allege that the procedure implemented by the union to collect "reduced agency fees" from nonunion members is constitutionally deficient under standards enunciated by the Supreme Court in *Chicago Teachers Union, Local No. 1, AFT, AFL–CIO v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). As a result, plaintiffs claim that their First Amendment right to refuse to financially "support ... ideological causes not germane to [the union's] duties as a collective bargaining

agent" has been inadequately protected. *Hudson,* 475 U.S. at 294, 106 S.Ct. at 1069 (quoting *Ellis v. Brotherhood of Railway Clerks,* 466 U.S. 435, 447, 104 S.Ct. 1883, 1891, 80 L.Ed.2d 428 (1984)); *see also Abood v. Detroit Bd. of Educ.,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977).

Currently pending before the Court is defendants' motion for summary judgment. The motion has been fully briefed and the Court now rules without need for a hearing pursuant to Local Rule 105.6 (D.Md.1989). For the reasons set forth below, defendants' motion will be granted.[1]

### I. Background

In 1986, Montgomery County recognized the Montgomery County Government Employees Organization–United Food & Commercial Workers, Local 400 ("the union" or "Local 400") as the exclusive bargaining representative for employees in the County's Service, Labor and Trades bargaining unit and the County's Office, Professional and Technical bargaining unit. *See* Montgomery County Code, Collective Bargaining Law, art. VII, §§ 33–101—33–112 (1986), appended as Exhibit D to Defendants' Answer. The union and the County have entered into collective bargaining agreements covering both bargaining units for the period July 1, 1987 through June 30, 1990. Appended as Exhibit E to Defendants' Answer. Under the heading "Agency Shop," both these collective bargaining agreements contain the following provision: "It shall be a continuing condition of employment that all bargaining unit employees shall become members of the Union within sixty (60) days of obtaining merit system status or shall pay a service fee." *Id.* at art. 3.1.[2] The purpose of this reduced agency fee is to compensate the union for its efforts on behalf of all employees, regardless of the employees' member-

ship in the union. *See* Montgomery County Code, Collective Bargaining Law, art. VII, § 33–104(c) ("A certified representative ... has the duty to represent fairly and without discrimination all employees in the unit without regard to whether the employees are members of the employee organization....").

For those nonunion members who elect to pay the reduced agency fee,[3] the county automatically deducts the fee from nonmembers paycheck each pay period. For the fiscal year beginning July 1988, the county deducted 82.59% of full union dues from nonmembers' paychecks as the reduced agency fee. *See* Fee Notification Letter dated June 8, 1988, appended as Exhibit A to Defendants' Answer.[4] The Fee Notification Letter sent to each nonmember explained that the reduced fee was calculated to compensate the union for activities undertaken on behalf of all employees, as distinct from political activities:

> The amount of 82.59% of regular dues represents that portion of all UFCW/Local 400 expenditures which are spent by the union for collective bargaining process, contract administration, and the pursuit of matters affecting wages, hours and other conditions of employment.... Non-chargeable expenditures represent the remaining 17.41% of expenditures....

*Id.* at 2. The Fee Notification Letter also advised nonmembers that "[a]ttached to this letter is a financial statement which explains how the percentage has been calculated, based upon the union's actual expenditures for fiscal 1987." *Id.*

The financial information appended to the Fee Notification Letter contains a detailed presentation of the union's expenditures for the preceding fiscal year. This packet of information begins with a letter

---

1. Plaintiffs, in their complaint, also moved for class certification under Rule 23, Fed.R.Civ.P. Since the Court concludes that defendants' motion for summary judgment should be granted, plaintiffs' motion for class certification is deemed moot.

2. "Service fee" and "agency fee" are synonymous.

3. A non-member of the union can, if he chooses, pay the full dues to the union rather than the reduced agency fee.

4. The Fee Notification Letter is reproduced in pertinent part as Appendix I to this Memorandum and Order.

from the certified public accountant retained to calculate the reduced agency fee in which he identifies the information that he relied upon in reaching his conclusion that nonmembers' fair share was 82.59% of full union dues.[5] After the certified public accountant's letter, the information that he relied upon is reproduced. It consists of the following:

1. the audited year-end financial statement and independent auditors' report for Local 400, prepared by a certified public accounting firm;

2. a "summary schedule of chargeable expenditures," listing 35 separate categories of payments, with each payment broken down into its chargeable and nonchargeable component;

3. a "schedule of audited expenditures by function," in which each of the 35 categories of payments is broken down by the amounts allocable to "administration," "servicing," and "organizing & other nonchargeables";

4. three schedules of salary expenditures—one for administrative personnel, one for service personnel, and one for organizing personnel—indicating the amount allocable to chargeable and nonchargeable activities; and

5. a memo from the union explaining its estimate that "24% of Local 400's per capita payments to the International Union should be included in the [reduced agency fee calculation]."

Thus, nonunion members were presented with all the information that the independent auditor relied upon in determining the reduced agency fee.

Plaintiffs allege that this information "is insufficient for them to gauge the propriety of the union's fee or to understand why the fee is set at 82.59 percent of union dues. It fails to provide an adequate justification and explanation for the amount the

defendants unilaterally claimed plaintiffs were required to pay." Complaint, para. 21. They seek an injunction to prevent deduction of the reduced agency fee from nonmembers paychecks as well as declaratory relief under 28 U.S.C. § 2201.

### II. Standards for Summary Judgment

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure serves the important purpose of "conserv[ing] judicial time and energy by avoiding unnecessary trial and by providing a speedy and efficient summary disposition" of litigation in which the plaintiff fails to make some minimal showing that the defendant may be liable on the claims alleged. *Bland v. Norfolk & S.R.*, 406 F.2d 863, 866 (4th Cir. 1969).

The applicable standards for analyzing a motion for summary judgment under Rule 56 are well-established. The defendant seeking summary judgment bears the burden of showing the absence of any genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In determining if the defendant has met this burden, the Court must consider whether, when assessing the evidence in the light most favorable to the plaintiff, a "fair-minded jury could return a verdict for the plaintiff...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Pulliam Inv. Co., Inc. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987). Nevertheless, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. *See also Barwick v. Celotex Corp.*,

---

**5.** The certified public accountant who performed the calculation, Constantine L. Hagepanos of the accounting firm of Thomas Havey & Co., explained the process he followed in calculating the reduced agency fee in his affidavit submitted along with Defendant's Motion for Summary Judgment. "After specifically identifying each chargeable and non-chargeable component of the union's total expenditures for

the previous year and receiving from union counsel the calculation of chargeable expenditures associated with the local union's newsletter and associated per-capita taxes paid to the United Food and Commercial Workers International Union, AFL–CIO–CLC, I accumulated the expenditures by function and established the resulting total chargeable and nonchargeable percentages." Hagepanos Affidavit at 3–4.

736 F.2d 946, 958–59 (4th Cir.1984). The plaintiff must identify for the Court some dispute of fact that is material to the legal issues presented in the case in order to successfully oppose a motion for summary judgment.

In suits alleging the deprivation of constitutional rights, summary judgment is often inappropriate, especially prior to the completion of full discovery. *Tarleton v. Meharry Medical College,* 717 F.2d 1523, 1535 (6th Cir.1983); *see generally* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2732.2 (1983). However, if the factual background relevant to the constitutional issue is not contested and the legal issue is clearly presented, summary judgment under Rule 56 is appropriate. *See Pinckney v. United States,* 671 F.Supp. 405, 408 n. 3 (E.D.N.C. 1987) ("if the court is satisfied that a sufficient record has been developed [so] that there remains no genuine issue of fact, ... a defendant's motion for summary judgment [may] be granted"). *See also Andrews v. Education Ass'n of Cheshire,* 653 F.Supp. 1373 (D.Conn.) (granting defendant's motion for summary judgment in First Amendment/*Hudson* action), *aff'd,* 829 F.2d 335 (2d Cir.1987); *Jibson v. Michigan Educ. Association–NEA,* 719 F.Supp. 603 (W.D.Mich.1989) (same).

With these standards in mind, the Court will consider defendants' motion for summary judgment.

### III. Analysis

#### A. Ripeness

■ Before addressing the substantive constitutional issue presented in this litigation, the Court must consider defendants' argument that plaintiffs have failed to exhaust their available administrative remedies prior to instituting this suit. Plaintiffs have not objected to the reduced agency fee through the arbitration procedures detailed in the Fee Notification Letter. Defendants argue that plaintiffs must first object to the reduced agency fee and follow the arbitration procedures available to them before challenging the constitutionality of the reduced agency fee in federal court. Citing the Sixth Circuit's decision in *Tierney v. City of Toledo,* 824 F.2d 1497, 1502 (6th Cir.1987), defendants point out that the role of the Court is not to "rewrite the plan" or to assess the characterization of particular union expenses as chargeable or nonchargeable. *See* Defendants' Motion for Summary Judgment at 23–24. Finally, defendants point out that exhaustion of internal union remedies is generally mandated before a court challenge may be mounted. *See Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Pinar v. Dole,* 747 F.2d 899 (4th Cir.1984), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985).

Defendants' argument, however, misconstrues the nature of plaintiffs' complaint. Plaintiffs do not allege that the characterization of particular expenditures as chargeable or nonchargeable was improper, or even that the percentage figure set for the reduced agency fee was inappropriately high. Rather, plaintiffs allege that the procedures employed by the union to derive the reduced agency fee are constitutionally deficient. Thus, they are not asking the Court to delve into the minutiae of the plan's operation, but rather to assess the overall constitutionality of Local 400's reduced agency fee plan. Resort to arbitration prior to litigation in such a situation would serve no purpose and is not mandated. Justice White, in his *Hudson* concurrence, observed that "if the union provides for arbitration *and complies with the other requirements specified in our opinion,* it should be entitled to insist that the arbitration procedure be exhausted before resorting to the courts." *Hudson,* 475 U.S. at 311, 106 S.Ct. at 1078 (White, J., concurring) (emphasis added). Since plaintiffs allege that Local 400 has not complied with *Hudson's* procedural requirement, defendants may not insist that plaintiffs exhaust their arbitral remedies. *See George v. Baltimore City Public Schools,* 117 F.R.D. 368, 371–72 (D.Md.1987) (certifying a class of plaintiffs including nonunion members

who did not file an administrative grievance).

Moreover, the Supreme Court has repeatedly stressed that no exhaustion requirement exists in suits brought under § 1983. *Felder v. Casey,* 487 U.S. 131, 147, 108 S.Ct. 2302, 2311, 101 L.Ed.2d 123 (1988); *Patsy v. Board of Regents of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Suits brought under § 1983 " 'exist independent of any other legal or administrative relief that may be available as a matter of federal or state law. The are judicially enforceable *in the first instance.*' " *Felder,* 487 U.S. at 148, 108 S.Ct. at 2312 (quoting *Burnett v. Grattan,* 468 U.S. 42, 50, 104 S.Ct. 2924, 2929, 82 L.Ed.2d 36 (1984)) (emphasis added by the Court in *Felder*). Accordingly, plaintiffs' complaint is properly before the Court.[6]

## B. First Amendment Claim

Agency shop agreements, in which one union is certified as the exclusive collective bargaining agent for a group of employees and all employees are required to pay to support the union's duties, are a central feature of American labor law. *See Emporium Capwell Co. v. Western Addition Community Org.,* 420 U.S. 50, 62–63, 95 S.Ct. 977, 984–85, 43 L.Ed.2d 12 (1975). Because unions engage in activities beyond simple representation of employees, however, "requiring nonunion employees to support their collective bargaining representative 'has an impact upon their First Amendment interests' and may well 'interfere in some way with an employee's freedom to associate for the advancement of ideas, or to refrain from doing so, as he sees fit.' " *Hudson,* 475 U.S. at 301, 106

S.Ct. at 1073 (quoting *Abood,* 431 U.S. at 222, 97 S.Ct. at 1793) (citation omitted). "[A]t the heart of the First Amendment is the notion that an individual should be free to believe as he will, and that in a free society one's beliefs should be shaped by his mind and his conscience rather than coerced by the State." *Abood,* 431 U.S. at 234–35, 97 S.Ct. at 1799.

Notwithstanding the recognized potential for an infringement of nonunion members' First Amendment rights, the Supreme Court held in *Abood* that such arrangements are constitutional, provided that nonmembers are not required to finance ideological causes unrelated to the union's performance of its duties as the collective bargaining representative. A few years later, in *Ellis,* 466 U.S. 435, 104 S.Ct. 1883, the Court defined the line between those union activities sufficiently related to collective bargaining to warrant requiring nonunion members pay their fair share and those union activities whose cost must be borne solely by union members. Most recently, in *Hudson,* the Court enunciated the minimum procedures consistent with the constitution that a union must follow "to draw that necessary line and to respond to nonmembers' objections to the manner in which it was drawn." *Id.,* 475 U.S. at 294, 106 S.Ct. at 1069.

The instant litigation requires the application of the Court's decision in *Hudson* to Local 400's procedure for determining its reduced agency fee. In *Hudson,* the Court held, *inter alia,* "that the constitutional requirements for the Union's collection of agency fees include an adequate explanation of the basis for the fee...." *Id.* 475 U.S. at 310, 106 S.Ct. at 1077.[7] Elaborating, the Court noted:

---

6. Defendants also argue that named plaintiffs William H. Van Aller and Richard Newcome lack standing to pursue this action because they have never elected to pay the reduced agency fee. Instead, they have been paying the equivalent of full union dues. *See* Affidavit of James E. Dodson, para. 6. Plaintiffs apparently concede this point. Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment at 22 n. 8. (hereinafter "Plaintiffs' Opposition"). Nevertheless, defendants do not contest the standing of the other four named plaintiffs to maintain this litigation.

7. The Court also held that the constitutional minimum included "a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." *Hudson,* 475 U.S. at 310, 106 S.Ct. at 1078. Only the first of the three *Hudson* criteria, the adequacy of the union's explanation for the reduced agency fee, is at issue in this litigation.

Basic considerations of fairness, as well as concern for the First Amendment rights at stake, ... dictate that the potential objectors be given sufficient information to gauge the propriety of the union's fee. Leaving nonunion members in the dark about the source of the figure for the agency fee—and requiring them to object in order to receive information—does not adequately protect the careful distinctions drawn in *Abood.*

*Id.* at 306, 106 S.Ct. at 1075–76 (citations and footnotes omitted). After detailing the inadequacy of the Chicago Teachers Union's disclosure to nonmembers, the Court observed:

We continue to recognize that there are practical reasons why "[a]bsolute precision" in the calculation of the charge to nonmembers cannot be "expected or required...." The Union need not provide nonmembers with an exhaustive and detailed list of all its expenditures, but adequate disclosure surely would include the major categories of expenses, as well as verification by an independent auditor.

*Id.* at 307 n. 18, 106 S.Ct. at 1076 n. 18 (citations omitted).

 Plaintiffs focus their protest in particular on the role of the independent auditor in the determination of the reduced agency fee. Relying on two recent Sixth Circuit opinions, *Tierney v. City of Toledo*, 824 F.2d 1497 (6th Cir.1987), and *Damiano v. Matish*, 830 F.2d 1363 (6th Cir.1987), plaintiffs read *Hudson* as requiring that the independent auditor himself determine which of the union's expenditures relate to negotiation and administration of the collective bargaining agreement (i.e., charge-able activities) and which of the union's expenditures relate to ideological endeavors (i.e., nonchargeable). Plaintiffs' Opposition at 14–16. "A mere verification that expenditures were in fact made in categories designated by the union hardly constitutes 'verification of the union's calculations.'" *Id.* at 15, quoting *Damiano*, 830 F.2d at 1370. Plaintiffs assert that the certified public accountant retained by Local 400 to determine the reduced agency fee "blindly accepted" the union's classification of expenditures as chargeable or nonchargeable and calculated the reduced agency fee from these union-provided figures rather than performing a full audit of the union's expenditures and, in the course of that audit, classifying for himself which expenditures were chargeable or nonchargeable. *Id.* at 17–19. Plaintiffs argue that *Hudson* requires the independent auditor to "verify whether there are established legal criteria and contemporaneous hard data, showing the purpose of the expenditures, which reasonably justify *the union's* allocation...." *Id.* at 20 (emphasis in the original).[8]

Thus, this litigation poses a fairly narrow question: Must the certified public accountant, retained by the union to execute the "verification by an independent auditor" called for in footnote 18 of *Hudson*, perform his own classification of expenditures as chargeable or nonchargeable in the course of a full-dress audit of the union's expenditures? This Court, following the Second, Sixth, and Seventh Circuits, holds that the answer is no. *See Andrews v. Education Association of Chesire*, 829 F.2d 335 (2d Cir.1987); *Gilpin v. American*

---

**8.** Plaintiffs also object to the fact that the union established only two categories of expenditures—chargeable and nonchargeable—rather than three—chargeable, nonchargeable, and "gray area." They claim that *Hudson* demands that the union identify for nonmembers those expenditures that fall into a "gray area" of expenditures "that may ... be subject to dispute and hence resolution by an impartial decision-maker." Plaintiffs' Opposition at 17 (quoting *Tierney*, 824 F.2d at 1504).

While it seems that a union normally would be unable to cleanly segregate all expenditures into just two mutually exclusive categories, *Hudson* simply does not require the union to make a tripartite division of its expenses. The union may satisfy the constitutional demand for an "adequate explanation" of the reduced agency fee without allocating some expenditures to a "gray area." Assuming the other procedural requirements of *Hudson* were met, a nonunion member who disputed the reduced agency fee would be fully able to challenge the accuracy of the fee before the arbitrator without the allocation of some expenditures to a "gray area" category. *See Jibson v. Michigan Educ. Association–NEA*, 719 F.Supp. 603, 608–09 (W.D.Mich.1989) (holding that the "constitutional integrity" of the reduced agency fee plan did not mandate the identification of "gray area" expenditures).

Federation of State, County, and Municipal Employees, AFL–CIO, 875 F.2d 1310 (7th Cir.), cert. denied, —— U.S. ——, 110 S.Ct. 278, 107 L.Ed.2d 258 (1989); Gwirtz v. Ohio Education Association, 887 F.2d 678 (6th Cir.1989), petition for cert. filed (Feb. 21, 1990).[9] The constitutional minimum is satisfied when, as occurred here, the independent auditor accepts the union's allocation of fully-audited expenditures to either the chargeable or nonchargeable category and, based upon the union's allocation, determines the appropriate reduced agency fee.

In Andrews, the Second Circuit affirmed the district court's grant of summary judgment to the defendants in an action challenging the constitutionality of union procedures employed to calculate a reduced agency fee. The court noted that the Andrews plaintiffs, relying on footnote 18 of Hudson, "attack this plan because it does not provide for an independent audit of the breakdown [performed by the union] of expenditures to each major category of chargeable activities, even though it does provide for independent verification of the past-year's expenditures." Id., 829 F.2d at 339. Affirming the district court's conclusion, the court rejected plaintiffs' argument that "Hudson requires that both the union's expenditures and its allocation of expenses to chargeable and nonchargeable categories [be] audited...." Id. at 340. The court explained:

> [Plaintiffs'] approach to this problem would have the auditor making a legal, not an accounting, decision regarding the appropriateness of the allocation of expenses to chargeable and nonchargeable categories. We believe, however, that Hudson's auditor requirement is only designed to ensure that the usual function of an auditor is fulfilled. That usual function is to ensure that the expenditures which the union claims it made for certain expenses were actually made for those expenses.... The [plaintiffs'] interpretation of Hudson's auditing requirement is overly broad because it seeks to have the auditor function as

both an auditor in the traditional sense and as the independent decisionmaker as to chargeable expenses.

Id. Thus, the court refused to read Hudson as placing the burden of classifying expenditures as chargeable or nonchargeable on the independent auditor; that burden rests on the union which, of course, is ultimately liable for any errors in the definition of the reduced agency fee.

The Seventh Circuit, in Gilpin, reached the same conclusion. The Gilpin court affirmed, inter alia, the district court's judgment that the notice provided by the union was adequate under Hudson. Similar to the information provided by Local 400 in the case at bar, the union in Gilpin provided a list of 35 different expenditures by the union and indicated what percentage of each expense the union attributed to chargeable activities. Gilpin, 875 F.2d at 1316. Despite the detail provided by the union, the Gilpin plaintiffs complained that "the principles" by which chargeable expenses were distinguished from nonchargeable ones were not adequately presented. The court rejected this complaint. In doing so, the court astutely commented that if the union were required to provide such an explanation, "the notice would be as long and as complicated as an SEC prospectus." Id. The court continued:

> Since mounting a challenge is for all practical purposes free and since only one challenger is necessary to obtain a refund for all nonunion employees, we cannot see the point in requiring the union to provide even more information than the district judge required. In objecting to the notice, the plaintiffs and the National Right to Work Foundation are merely trying to hamstring the union.

Id. The notice provided by the union in Gilpin, which closely mirrors the notice provided by Local 400, was found to satisfy Hudson's procedural requirements.

In October of last year, the Sixth Circuit rendered its third opinion on the reach of

---

**9.** The Court notes that the National Right to Work Legal Defense Foundation, the organization representing plaintiffs in this litigation, represented the plaintiffs in each of these cases.

*Hudson*, in which it refined its previous rulings in *Tierney* and *Damiano*. In *Gwirtz*, the court affirmed the district court's decision that *Hudson* does not require a union "to engage its auditors to perform the 'highest' possible level of audit service on financial information provided to" nonmembers paying the reduced agency fee. *Id.*, 887 F.2d at 680. Rather, the " 'low level' " service provided, in which the auditor determined the reduced agency fee from information provided to it by the union, was deemed to be constitutionally adequate. *Id.* at 680, 682. Moreover, addressing plaintiffs' argument regarding the definition of "verification," the court held:

> On the question of "verification" by an auditor, we reject the plaintiffs' argument that the function of the independent auditor is to verify the union's calculation of the chargeable or nonchargeable nature of the major categories of union expenditures. Whether a union expenditure is "chargeable" or "nonchargeable" to nonmembers is a *legal* determination that depends upon the type of union activity for which the expenditure is made. It is not the role of the auditor to make such a legal determination. Rather, an auditor's role is to verify the expenditures made by the union so as to ensure that the expenditures that the union claims it made for particular expenses were actually made for those purposes. *Andrews v. Education Association of Chesire*, 829 F.2d 335, 340 (2d Cir.1987).

*Id.* at 682 (emphasis in original). Thus the Sixth Circuit is in accord explicitly with the Second Circuit, and implicitly with the Seventh Circuit, in rejecting the contention that *Hudson* requires the independent auditor to perform its own categorization of chargeable versus nonchargeable expenditures.

The Fourth Circuit has not had the opportunity to address directly the issue presented in this litigation. However, in *Crawford v. Air Line Pilots Association International*, 870 F.2d 155 (4th Cir.1989), *reh'g in banc granted* (May 11, 1989), the Fourth Circuit approved in passing a reduced agency fee scheme very similar to the one employed by Local 400. The court explained that "the Association relies on independently audited financial statements to divide its expenses from the previous year into those that are germane to collective bargaining and those that are not germane. A report of germane and nongermane expenses is sent to every agency fee-payer...." *Id.* at 160.

While the Fourth Circuit has not ruled on the issue, at least one judge of this bench has done so. Judge Niemeyer's recent opinion in *Kidwell v. Transportation Communications International Union*, 731 F.Supp. 192 (D.Md.1990), considered, *inter alia*, the meaning of "verification" in note 18 of *Hudson*. Relying on the plain language of *Hudson* as well as the Second Circuit's opinion in *Andrews*, Judge Niemeyer wrote: "The Union argues that [*Hudson*] does not obligate the independent auditor to make the allocation decision between chargeable and nonchargeable expenditures. In this respect, defendant is correct.... The auditor is not required to decide the legal issue of what is chargeable and what is not." *Kidwell*, at 202.

Turning to the case at bar, the Court concurs with Judge Niemeyer and the courts in *Andrews, Gilpin,* and *Gwirtz*, and holds that constitutionally adequate notice is provided when the union allocates its audited expenditures between chargeable and nonchargeable categories and the independent auditor bases the reduced agency fee upon that allocation. This constitutes "verification." A number of considerations, interwoven in the decisions described above, inform the Court's decision.

Most importantly, plaintiffs' vision of the role of the independent auditor in the calculation of the reduced agency fee is vastly overbroad. Plaintiffs argue that "the type of training and experience accountants receive qualifies them to make accounting judgments as to what expenditures" are chargeable and nonchargeable. Plaintiffs' Opposition at 18–19. Under the plaintiffs scheme, however, the auditor would be making *legal* judgments, not accounting judgments. As the Supreme Court's decision in *Ellis* makes clear, defining the line

between chargeable and nonchargeable expenditures is a complex legal judgment; similarly, the allocation of a particular expenditure to the category of chargeable or nonchargeable involved legal interpretation and judgment. Whether or not accountants are qualified to perform that job, it is clear that the constitution does not demand that accountants do so.[10]

Second, plaintiffs' demand that the allocation of expenses itself be audited conflicts with *Hudson's* recognition that " '[a]bsolute precision' in the calculation of the charge to nonmembers cannot be 'expected or required.' " *Hudson,* 475 U.S. at 292 n. 18, 106 S.Ct. at 1076 n. 18. The procedural requirements enunciated in *Hudson* are designed to assure that "potential objectors be given *sufficient information* to gauge the propriety of the union's fee." *Id.* at 306, 106 S.Ct. at 1075 (emphasis added). "While nonmembers certainly cannot be le[ft] in the dark about the source of the figure for the agency fee," *id.*, the union is not required to provide nonmembers with the most reliable information possible. *Cf. Andrews,* 829 F.2d at 340 ("we do not believe that *Hudson* stands for the proposition that a union's procedures are constitutionally infirm unless the constitute the least restrictive process imaginable").

The plaintiffs are deeply troubled that the procedure employed by Local 400 provides "little assurance" regarding the accuracy to the reduced agency fee automatically deducted from plaintiffs' paychecks. *See* Plaintiffs' Opposition at 18. Their fears, however, do not find support in the First Amendment or in *Hudson.* Local 400's procedure for calculating the reduced agency fee and informing nonunion members of that fee fully comports with the constitution.

Accordingly, it is this 14th day of March, 1990, by the United States District Court for the District of Maryland,

**10.** The plaintiffs report that their "accounting expert [concluded] that both the letter and services of Mr. Hagepanos as well as the [union's] report do not meet the auditing and accounting requirements of *Hudson* and its progeny." Plaintiffs' Opposition at 19. This statement il-

ORDERED:

1. That defendants' motion for summary judgment is GRANTED.

## APPENDIX I

PLEASE READ THIS LETTER CAREFULLY IT CONTAINS IMPORTANT INFORMATION AND PROCEDURES CONCERNING YOUR LEGAL RIGHTS

As you know, the Montgomery County Government Employees Organization, a division of United Food and Commercial Workers, Local 400, is your collective bargaining representative. MCGEO/Local 400 and the County government negotiated a collective bargaining agreement which went into effect as of July 1, 1987, and will remain in effect until July 1, 1990. This memo is directed to those Montgomery County Employees who are not dues-paying members of MCGEO/Local 400.

## SERVICE FEE

(ALSO KNOWN AS AGENCY FEE)

As an employee represented by MCGEO/Local 400 who has not joined the organization, you are required to pay a service fee, rather than dues, to support MCGEO's efforts on behalf of you and your fellow employees. This fee is in the amount of $7.50 per pay period. This fee is set in an amount equal to the regular dues paid by members of MCGEO/Local 400. The payment of such a fee is authorized by County law, and has been held to be constitutional by the 1986 decision of the U.S. Supreme Court in *Chicago Teachers Union v. Hudson.* Since all of MCGEO and Local 400's activities are designed to advance the interests of *all* represented employees, whether or not they are members, we believe it is appropriate that all such employees should pay their fair share toward such

lustrates the Court's point: Whether the services performed by the independent auditor satisfy constitutional concerns is not a question for accountants; for better or for worse, it is a question for lawyers and judges.

efforts. Service fees are automatically deducted from employees' paychecks.

## REDUCED SERVICE FEE

There may be some employees who may not wish to contribute to certain union activities not directly related to employee representation. If you want to pay your share of just the costs of the collective bargaining process, contract administration, and the pursuit of matters affecting wages, hours and other conditions of employment, you have the right to submit a written request that the amount of your service fee be set at 82.59% of the regular dues/service fee paid by members of MCGEO/Local 400, ($6.19 per pay period). Such a request must be submitted in writing to MCGEO/Local 400 at 4301 Garden City Drive, Landover, Maryland 20785 on or before July 15, 1988 with a copy to Montgomery County Labor Employee Relations, Personnel Office, 7th Floor, 101 Monroe Street, Rockville, Maryland 20850. The request must include the employee's name, home address, social security number, job title, department, work location and office phone number. If a written request is not received by us on or before July 15, 1988, your service fee payment will be equal to 100% of regular MCGEO/Local 400 dues.

*However, if you already submitted a written request for the reduced service fee for the 1987–88 period, you will automatically only pay the recalculated reduced rate for 1988–89. The July 1988 to July 1989 calculation of $82.59% will be implemented as of the pay period ending on July 29, 1988. If you are paying the reduced fee now, but wish to pay the full fee of 100%, please submit a written request to do so.*

The amount of 82.59% of regular dues represents that portion of all UFCW/Local 400 expenditures which are spent by the union for collective bargaining process, contract administration, and the pursuit of matters affecting wages, hours and other conditions of employment. These "chargeable" expenditures include paying for activities such as negotiations with employers, informal meetings with employer representatives, discussion of work-related issues with employees, handling employees' work-related problems through the grievance procedure, lobbying with respect to matters directly related to conditions of employment and union administration.

Non-chargeable expenditures represent the remaining 17.41% of expenditures and go for activities such as community services, lobbying which benefits represented employees as citizens rather than as workers, costs of affiliation with other organizations, recruitment of members of the union and member-only benefits.

Attached to this letter is a financial statement which explains how the percentage has been calculated, based upon the union's actual expenditures for fiscal 1987. The reduced fee of 82.59% will be reviewed again and adjusted, if necessary, on or about July 15, 1988.

## CHALLENGES TO THE REDUCED SERVICE FEE CALCULATION

If any service fee payer wishes to contest the enclosed calculation of 82.59% of the regular dues (see enclosed statement) which must be paid by those persons who do not wish to pay for certain union activities not directly related to employee representation, there is a procedure for obtaining a review of that calculation. Any person wishing to challenge the calculation of the 82.59% reduced service fee must submit:

1. A request for reduced fee (unless you are already a reduced fee payer, in which case you need only to submit items 2 and 3),

2. A written notice that he or she challenges the amount of the reduced fee, and

3. A request for a hearing to determine its accuracy.

The challenge must include the employee's name, home address, social security number, job title, department, work location, and office phone number. That notice and hearing request must be received by the Office of the Montgomery County Labor Administrator on or before July 15,

1988. The address is Joseph A. Sickles, Esquire, 4720 Montgomery Lane, Suite 1000, Bethesda, Maryland 20814. If a challenge is received after that date, it will not be accepted.

All requests for arbitration will be consolidated and an arbitration proceeding will be initiated before an impartial fact-finder appointed by the Labor Relations Administrator as soon as possible. The arbitration will be conducted in conformity with the relevant rules of the American Arbitration Association, 1730 Rhode Island Avenue, N.W., Suite 509, Washington, D.C. 20036. MCGEO/Local 400 will pay the arbitrator's fee.

Upon receipt of a written challenge, UFCW/Local 400 will place an amount equal to the challenger's reduced fee payment in an interest bearing escrow account. The reduced fee amounts will remain in escrow until the impartial fact-finder issues a decision on the challenges. Should the decision lower the percentage of chargeable expenditures, the excess portion of the escrowed fees, plus interest, will be paid to the challengers. Thenceforth, all reduced service fee payers will pay the adjusted fee amount. Should the fact-finder approve the 82.59% figure, all escrowed monies will revert to UFCW/Local 400.