Kimberly MITCHELL and Kenneth
Mitchell, Plaintiffs,

v.

Pat CELLONE and P & R Properties,
Inc., and P & R Properties, LP,
Defendants.

Civil Action No. 01–2028.

United States District Court,
W.D. Pennsylvania.

Nov. 17, 2003.

369

James Q. Harty, DKW Law Group, Pittsburgh, PA, for Plaintiffs.

Robert E. Durrant, Campbell, Durrant & Beatty, Pittsburgh, PA, for Defendants.

## OPINION

COHILL, District Judge.

Plaintiffs Kimberly Mitchell and Kenneth Mitchell commenced this action asserting that the Defendants, Pat Cellone, P & R Properties, Inc., and P & R Properties, LP, violated the Federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and the federal property rights of minority citizens under 42 U.S.C. § 1982. Defendants have filed a motion to dismiss arguing that the statute of limitations bars the section 1982 claim, and that the Federal Fair Housing claims are barred because the Plaintiffs have already elected to seek a remedy in state court, or alternatively, because this Court should abstain from hearing these claims.

## I. Background

The factual background to this case, as set forth in Plaintiffs' Complaint, is as follows. The Plaintiffs, Kimberly Mitchell and Kenneth Mitchell, husband and wife, are African–American individuals who sought to rent an apartment from Defendant Pat Cellone, the property manager for apartment buildings owned by Defendant P & R Properties L.P.

The two apartment complexes relevant to the instant case are the Tuscany apartments, located at 300 Washington Road in Pittsburgh, Pennsylvania, and the Carnegie apartments, located at 848 Kennedy Street in Carnegie, Pennsylvania. During the relevant time period in June and July 1998, the Carnegie apartments consisted of racially mixed tenants, including African–Americans, and the Tuscany apartments had no African–American tenants.

In June, 1998, Kimberly Mitchell wrote two checks to Defendant P & R Properties for the security deposit and application fee for the rental of one of the Carnegie apartments. No lease was signed. Thereafter, Defendant Pat Cellone showed Kimberly Mitchell an apartment at the Tuscany apartments, which she liked better than the Carnegie apartment.

On June 30, 1998, after both Kimberly and Kenneth Mitchell viewed the Tuscany apartment, then immediately signed a one-year lease for the apartment beginning July 1, 1998, and wrote two checks payable to P & R Properties for the rent on the Tuscany apartment and for the difference in security deposit between the Tuscany and Carnegie apartments. Also on June 30, 1998, Ms. Cellone gave the Mitchells the keys to the Tuscany apartment, an electronic access card for the building, and a garage door opener.

The next day Ms. Cellone telephoned Kimberly Mitchell and told her that she had discussed with the other principals of P & R Properties that the Mitchells were set to move into the Tuscany apartment.

Ms. Cellone told Kimberly Mitchell that she and the other principals decided that they wanted the Mitchells to reconsider. In short, the reasons given to Kimberly Mitchell, subsequently confirmed in conversations between Ms. Cellone and Kenneth Mitchell, were because the Mitchells were African–American and the tenants of the Tuscany were not.

After being effectively barred from entering the Tuscany apartment, the Mitchells did not move into the apartment. On August 11, 1998, the Mitchells filed a complaint with the United States Department of Housing and Urban Development ("HUD"), alleging a violation of the Federal Fair Housing Act ("FHA").

Pursuant to the FHA, the Secretary of HUD referred the complaint to the Pennsylvania Human Relations Commission ("PHRC") for administrative processing. The PHRC found that there was probable cause to credit the Mitchells' allegations. Eventually, both parties elected to have the complaint heard in a civil action in the Commonwealth Court of Pennsylvania where the PHRC filed the complaint on behalf of the Mitchells. The Mitchells sought to intervene in their own right in the Commonwealth Court action, but the Court denied their applications. A trial date was set, however, before trial the Mitchells filed the instant federal court action. They then sought and obtained leave to withdraw their complaint in the Commonwealth Court.

## II. Standard of Review

Defendants bring this motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). (*Defendants' Brief in Support of Motion to Dismiss*, at 2.) Plaintiffs argue that the Defendants raise arguments that are not properly presented in a motion to dismiss, and to the extent those arguments are examined, Plaintiffs request that the Court treat the motion as a motion for summary judgment. (*Plaintiff's Reply Brief in Opposition to Motion to Dismiss*, at 1–2.)

Defendants argument that Plaintiffs have failed to state a claim under section 1982 because the case was filed beyond the statute of limitations is properly brought pursuant Federal Rule of Civil Procedure 12(b)(6). Defendants arguments that this Court lacks jurisdiction is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1).

■ A motion to dismiss pursuant to Federal Rule 12(b)(6), tests the legal sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of the claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99); *see also Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273 (3d Cir. 1985). "A motion to dismiss pursuant to 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir.1997). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977).

■ With regard to Rule 12(b)(1), the Third Circuit Court has explained that such a motion raises the issue of " 'the

trial court's jurisdiction—its very power to hear the case.'" *Robinson v. Dalton,* 107 F.3d 1018, 1021 (3d Cir.1997) (quoting *Mortensen v. First Federal Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)). "We have explained that in such a circumstance, a trial court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Robinson,* 107 F.3d at 1021 (quoting *Intern. Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.,* 673 F.2d 700, 711 (3d Cir.1982)). " '[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Robinson,* 107 F.3d at 1021 (quoting *Mortensen,* 549 F.2d at 891).

█ Both parties have attached a number of documents to their pleadings. As noted, under a 12(b)(1) motion, the court must satisfy itself of its jurisdiction and as such undisputed authentic documents may be necessary to that determination. In addition, "a court may consider an undisputedly authentic document attached to a defendant's motion to dismiss, provided that the plaintiff's claims are based upon the document, along with matters of public record, without converting the motion to one for summary judgment and requiring the opportunity for discovery ...." *Rogan v. Giant Eagle, Inc.,* 113 F.Supp.2d 777, 782 (W.D.Pa.2000). Here, the court may consider the documents from the Pennsylvania Human Relations Commission, the Commonwealth Court of Pennsylvania, and the Memorandum of Understanding between the Department of Housing and Urban Development and the Pennsylvania Human Relations Commission as undisputed authentic documents. We also note that neither party disputes the chronological factual events that occurred with HUD, the PHRC, and the Commonwealth Court, instead focusing their arguments on matters of law.

## III. Discussion

### A. Timeliness of Plaintiff's Section 1982 Action

Count II of Plaintiffs' Complaint alleges a civil rights violation of 42 U.S.C. § 1982. Section 1982 prohibits racial discrimination in transactions relating to real and personal property.

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982.

Defendants argue that the appropriate statute of limitations is two years since the section 1982 claim most closely resembles a claim for personal injuries. The actions alleged by Plaintiffs that violated section 1982 occurred no later than July 1998. Since the Complaint was filed on October 28, 2001, Defendants assert that the Mitchells' section 1982 claim is untimely and should be dismissed.

Plaintiffs respond by arguing that the appropriate statute of limitations should be four years since a transaction involving real property is contractual in nature.

█ Section 1982 does not have a statute of limitations, and thus. to determine the proper limitations period we look first to the laws of the United States, and if there is no appropriate federal law setting forth the limitations period we look to the laws of the state where the federal court is situated. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), 42 U.S.C. § 1988.

The United States Court of Appeals for the Tenth Circuit has explained the limitations period of several reconstruction era statutes as interpreted by the Supreme Court of the United States as follows:

> The Supreme Court has held that the forum state's statute of limitations for personal injury actions provides the appropriate limitations period for civil rights claims under § 1981, [citing *Lukens Steel Co.*, 482 U.S. at 660–62, 107 S.Ct. 2617], as well as 42 U.S.C. § 1983, [citing *Wilson v. Garcia*, 471 U.S. 261, 276–80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)], but the Court has not yet addressed the issue in connection with § 1982.

*Scheerer v. Rose State College*, 950 F.2d 661, 664 (10th Cir.1991), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2995, 120 L.Ed.2d 872 (1992). The federal courts who have examined this issue "have unanimously agreed that since 'actions brought pursuant to section 1982 [like sections 1981 and 1983,] are best characterized as personal injury actions', the most appropriate state statute of limitations for such actions is the statute applicable to personal injury actions." *Hall v. Burger King Corp.*, 912 F.Supp. 1509, (S.D.Fla.1995), quoting the District Court in *Scheerer v. Rose State College*, 774 F.Supp. 620, 622 (W.D.Okla. 1991).

■ We agree that section 1982 is most closely analogous to a personal injury action. Although section 1982 involves transactions relating to real and personal property its purpose is not to enforce a contract or rectify a violation of a contract, but rather to rectify a wrong done to a person based on his or her race, *i.e.*, an injury to the person. We therefore hold that the two-year personal injury statute of limitations applies to section 1982 claims. Accordingly, Plaintiffs' section 1982 claim was filed beyond the applicable limitations period and is therefore barred.

### B. Jurisdiction Over Federal Fair Housing Act Claims

Defendants argue that this court lacks jurisdiction over the Mitchells' Fair Housing Act claims because the Mitchells have already chosen to file a civil action in State court pursuant to 42 U.S.C. § 3613, and cannot not change their minds and file a civil action in federal court. Section 3613(a)(1)(A) of the FHA provides in relevant part as follows:

> An aggrieved person may commence a civil action *in an appropriate United States district court or State court* not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, ..., to obtain appropriate relief with respect to such discriminatory housing practice or breach.

42 U.S.C. § 3613(a)(1)(A) (emphasis added).

Defendants first assert that the factual basis for the instant federal Complaint is identical to the factual basis for the charge of housing discrimination filed by the Mitchells with HUD pursuant to 42 U.S.C. § 3610(a) of the FHA.

In their Complaint, the Mitchells allege the following with regard to their prior administrative efforts in seeking to vindicate their rights:

38. On or about August 11, 1998, the Mitchells filed a complaint with the United States Department of Housing and Urban Development ("HUD"), alleging a violation of the Federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*

39. The administrative proceeding before HUD on the Mitchells' complaint is still pending. An Administrative law judge has never commenced a hearing

on the record concerning the Mitchells' complaint.

(Complaint, at ¶¶ 38–39). In addition, the Mitchells allege federal jurisdiction for their FHA claims pursuant to section 3613 of Title 42 if the United States Code. (Complaint, at ¶ 7.)

Section 3613 provides that the 2-year limitations period does not include the time an administrative proceeding was pending based on a discriminatory housing practice complaint. 42 U.S.C. § 3610(a)(1)(B). In addition, section 3613 permits an aggrieved person to commence a civil action whether or not a complaint has been filed under section 3610(a) and regardless of the status of a complaint that has been filed. 42 U.S.C. § 3610(a)(2) (with exceptions where conciliation agreements have been reached). Finally, section 3613 prohibits the filing of a civil action under 3613(a)(1)(A) if an administrative law judge has commenced a hearing on the record with respect to an alleged discriminatory housing practice charge. 42 U.S.C. § 3610(a)(3).

The Mitchells federal Complaint does not contain the entire history of the administrative proceedings that occurred with respect to their complaint filed under the FHA. The parties filings with respect to the instant motion to dismiss have provided the necessary history, none of which is in dispute.

The Mitchells' HUD complaint was given case number 03-98-0621-8. In their Brief in Opposition, the Mitchells explain that their HUD complaint was referred to the PHRC in accordance with the mandatory language of section 3610(f) of the Fair Housing Act. (*Plaintiffs' Brief in Opposition,* at 2.) The PHRC complaint was given docket number H–7477.

Section 3610(f) provides in relevant part as follows:

Whenever a complaint alleges a discriminatory housing practice . . . within the jurisdiction of a State or local public agency; and . . . as to which such agency has been certified by the Secretary under this subsection; . . . *the Secretary shall refer such complaint to that certified agency* before taking action with respect to such complaint.

42 U.S.C. § 3610(f) (emphasis added). Once the complaint is referred, HUD is prohibited from taking any further action with respect to the complaint unless one of several enumerated exceptions apply. 42 U.S.C. § 3610(f)(2)(A-C). None of the exceptions apply in the instant matter.

Thus, Plaintiffs are technically correct that an "Administrative law judge has never commenced a hearing on the record concerning the Mitchells' complaint." (Complaint, at ¶ 39.) However, the reason is because the matter was statutorily referred to the state agency, the PHRC, for administrative processing, and not because the HUD administrative process was ineffectual, stalled, or otherwise prejudicial to Plaintiffs. In fact, the FHA and the PHRA are purposely intertwined.

The PHRC is responsible for investigating and attempting to resolve the complaint pursuant to the Memorandum of Understanding between the Department of Housing and Urban Development and the Pennsylvania Human Relations Commission. (Attached to *Plaintiffs' Brief in Opposition* at Ex. A.) The Mitchells' administrative complaint thus proceeded before the PHRC in accordance with section 959 of the PHRA. 43 P.C.S.A. § 959.

The PHRC conducted an investigation and concluded that probable cause existed to credit the allegations of the Mitchells. *See* 43 P.C.S.A. § 959(b)(1) & (c). Conciliation efforts were unsuccessful, and the matter was being considered for review of a public hearing recommendation by the

PHRC where the Defendants would answer the charges of the complaint before the Commission. 43 P.C.S.A. § 959(c) & (d).

In accordance with section 959(d.1) of the PHRA, the PHRC sent a "Notice of Election" to the Mitchells and to the Defendants informing each side of their right to choose whether the complaint would be heard either by a Judge of the Pennsylvania Commonwealth Court or by a Hearing Examiner at an Administrative Hearing under the Pennsylvania Human Relations Commission. (See Letter dated November 3, 2000, from PHRC, "Notice of Election," attached as Ex. B to *Plaintiffs' Brief in Opposition* and attached to *Defendants' Reply Brief, see also* Memorandum Opinion of the Commonwealth Court, at No. 585 M.D.2000, February 14, 2001, at 1–2, attached as Ex. C to *Plaintiffs' Brief in Opposition* ) Section 959(d.1) provides in part as follows:

> When notice of hearing is given as set forth in subsection (d) and *an election procedure is required by the Fair Housing Act,* either party may elect to have the claim asserted in the complaint decided in a civil action brought under the original jurisdiction of Commonwealth Court. The written notice of the Commission shall be sent to all parties and will inform them of their right to take civil action. An election must be made within twenty days after receipt of the notice of hearing.

43 P.C.S.A. § 959(d.1) (emphasis added.)

Both parties elected a hearing before a Judge of the Commonwealth Court. The Defendants made their election by letter dated November 27, 2000, after which Defendants learned that the Mitchells had already made their election for a hearing before the Commonwealth Court. On December 21, 2000, the PHRC filed a complaint on behalf of the Mitchells with the

Commonwealth Court in accordance with section 959(d.1) ("If an election for civil action is made by either party, the Commission shall, within thirty days from the date of election, commence and maintain a civil action on behalf of the complainant. . . .").

Defendants argue that the parties election to commence a civil action in state court forecloses the commencement of a civil action in federal court.

On January 17, 2001, the Mitchells filed an Application to Intervene in the Commonwealth Court action filed by the PHRC on their behalf. On February 14, 2001, the Commonwealth Court denied the Mitchells' Application to Intervene. The Mitchells subsequent application for reargument before a three judge panel or before the court *en banc* was also denied. The Mitchells viewed the Commonwealth Court's denial of their efforts to intervene as a "deni[al] of the right to participate in the Commonwealth Court action" thereby causing the Mitchells to conclude that they had "little choice but to file the present federal action." (*Plaintiff's Brief in Opposition,* at 4.)

As set forth above, the FHA provides that an "aggrieved person may commence a civil action in an appropriate United States district court or State court. . . ." 42 U.S.C. § 3613(a)(1)(A). Defendants' position is that the section 3613 election for a civil action in a federal district court or State court was made when the parties elected to have the complaint heard in the Pennsylvania Commonwealth Court, a State Court.

The Mitchells' position is that the "Notice of Election" issued by the PHRC giving the parties a choice to elect a hearing on the complaint before the PHRC or the Commonwealth Court was a continuation of the administrative process and was not

an election commencing a civil action under section 3613 of the FHA.

The Mitchells also argue that even though they elected to have the complaint heard before the Commonwealth Court it was the PHRC that filed the complaint, not the Mitchells. The Mitchells argue that the subsequent denial of their claimed right to intervene in the Commonwealth Court meant that they were never a party to the Commonwealth Court action. The Mitchells further argue that under the FHA and PHRA "aggrieved persons can pursue an administrative procedure and then invoke their own private cause of action." *(Plaintiffs' Brief in Opposition,* at 6.) Therefore, the Mitchells conclude, the instant federal action is their own properly filed private civil action.

When the Mitchells sought to intervene in the Commonwealth Court they argued for the right to appear based on the language in the Notice of Election. The "Notice of Election" from the PHRC explained the PHRC Counsel's role in the event the case is tried before the Commonwealth Court as follows:

> an attorney from the Pennsylvania Human Relations Commission will prosecute the case on behalf of the aggrieved person and the Commonwealth *unless the Complainant chooses to be represented by his/her own counsel*

(Notice of Election, § B.1.) (emphasis added) (The Notice of Election, § A.2, gives an identical statement with regard to the role of the PHRC Counsel in the event the case is tried before an administrative proceeding.)

The PHRC joined the Mitchells' argument that there is a statutory right of a complainant to proceed on their own behalf. (Mem. Op., Feb. 14, 2001, at 2.) The Commonwealth Court resolved this issue against the Mitchells. The Court explained that the "notice of election which

notified the parties in this case of their rights, goes beyond both the enabling statute and the rules enacted thereunder in telling [the Mitchells] they may have individual representation in the Commonwealth Court suit (and may appear in their own right by implication)." *(Id.)* The Commonwealth Court quoted 43 P.S. § 959(d.1), and explained that by its plain language this section "does not give the complainants a right to appear other than derivatively through the commission or attorney general." *(Id.* at 3.)

█  Section 959(d.1) plainly provides that the "election for civil action" is made by the parties, and only then shall the Commission commence the civil action. As previously explained, the FHA and the PHRA are intertwined such that the FHA was required to refer the Mitchells' complaint to the PHRC for administrative processing. See 42 U.S.C. § 3610. The PHRC administered the complaint and eventually issued a notice of election that included an election to commence a civil action in State court. Although the Pennsylvania Statute requires that the Commission file the complaint on behalf of the Mitchells in Commonwealth Court, we nonetheless cannot characterize such an action as anything but a civil action commenced in a state court. Likewise, while the "Notice of Election" itself giving the parties a choice to elect a hearing on the complaint before the PHRC or the Commonwealth Court is a continuation of the administrative process, the actual election made by the Mitchells to commence an action in civil court was a choice under section 3613 that set the case in civil court.

The PHRA requires that when the FHA requires an election procedure, the PHRC must notify the parties of their right to commence a civil action. 43 P.S. § 959(d.1). Section 3613 of the FHA re-

quires an election procedure. The Mitchells were at all times represented by counsel. Once they chose to commence a civil action they made their election. Apparently the Commission, as well as the Mitchells, believed that the Mitchells had the right to intervene in the Commonwealth Court action despite the plain language of section 959(d.1). The Commonwealth Court's decision appears to do no more than explain the plain statutory scheme.

We also note that there is no indication that the Mitchells sought to argue in the Commonwealth Court that their due process rights were somehow violated by the "Notice of Election" suggestion that they could appear individually in the Commonwealth Court. We doubt that such an argument would have been successful. Not only is the statutory language of section 959(d.1) clear, but also the PHRC was prosecuting the action on behalf of the Mitchells and thus their rights were being pursued.

The allegations of the Complaint along with the PHRC's initial suggestion crediting the allegations indicate that the Mitchells had a meritorious case. However, they chose to end that process after having made an election to proceed in state court. Had the Mitchells permitted the Commonwealth Court action to proceed the Commission would have prosecuted the action on their behalf and possibly won vindication of their rights and exposed a discriminatory housing practice. Having made their election we are not empowered to permit a second election when the statute plainly provides for only one. We conclude that we are without jurisdiction to hear this complaint and accordingly the complaint will be dismissed.

In light of our conclusion on jurisdiction we decline to address Defendants' remaining arguments that we abstain.

*IV. Conclusion*

Plaintiffs claim of a violation under section 1982 will be dismissed because it was filed beyond the limitations period. Plaintiffs' claim of a violation of the Federal Fair Housing Act will be dismissed because we conclude that we lack jurisdiction. An appropriate Order follows.

### *ORDER*

AND NOW, to-wit, this *17th* day of November, 2003, after careful consideration and for the reasons set forth in the Opinion accompanying this Order, it is hereby ORDERED, ADJUDGED, and DECREED that Defendants' Motion to Dismiss (**Doc.5**) be and hereby is GRANTED as follows:

1. Defendant's Motion to Dismiss Count II alleging a violation of 42 U.S.C. § 1982 is GRANTED; Count II is hereby dismissed.

2. Defendant's Motion to Dismiss Count I alleging a violation of 42 U.S.C. § 3601 *et seq.*, is GRANTED; Count I is hereby dismissed.

The Complaint is dismissed and the Clerk of Courts be and hereby is directed to mark this case closed.