

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-1-2004

# Mitchell v. Cellone

Precedential or Non-Precedential: Precedential

Docket No. 04-1063

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Mitchell v. Cellone" (2004). *2004 Decisions.* Paper 112.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/112

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>PRECEDENTIAL</u>

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

_____

NO. 04-1063
_____

KIMBERLY MITCHELL;
KENNETH MITCHELL
                    <u>Appellants</u>

v.

PAT CELLONE; P&R PROPERTIES,
INC.; P&R PROPERTIES, LP

_____

On Appeal from the United States
District Court for the Western District
of Pennsylvania
(D.C. Civil No. 01-cv-02028)
District Judge:
Hon. Maurice B. Cohill, Jr.

_____

Argued October 7, 2004

BEFORE: SLOVITER, VAN
ANTWERPEN, and COWEN,
<u>Circuit Judges</u>

(Filed: November 1, 2004)

James Q. Harty, Esq. (Argued)
DKW Law Group
600 Grant Street
USX Tower, 58th Floor
Pittsburgh, PA 15219

        Counsel for Appellants

Robert E. Durrant, Esq. (Argued)
Campbell, Durrant & Beatty
555 Grant Street
Suite 310
Pittsburgh, PA 15219

        Counsel for Appellees

_____

OPINION
_____

VAN ANTWERPEN, <u>Circuit Judge</u>

        This case presents a question that
has not previously been answered in this
Circuit concerning the Fair Housing Act.
Should a couple alleging racial
discrimination in housing be allowed to
initiate a private lawsuit in federal court, if
they have previously filed an
administrative complaint under the Fair
Housing Act that has resulted in a state
agency bringing a state court action against
the alleged discriminator? We answer this
question in the affirmative, and therefore
we reverse the order of the District Court
which dismissed the case for lack of
jurisdiction.

**I.**

        The Fair Housing Act was designed
to provide nationwide fair housing to

minorities who had previously been victims of invidious racial discrimination, and is a valid exercise of congressional power under the Thirteenth Amendment to eliminate badges and incidents of slavery. *See Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 439-440, 88 S.Ct. 2186, 20 L. Ed. 2d 1189 (1968). This legislation makes it the policy of the United States to eliminate all instances of racial discrimination in housing.

Kimberly and Kenneth Mitchell are African-Americans who attempted to rent an apartment from Ms. Pat Cellone, the operating owner for the buildings owned by P&R Properties, Inc. and P&R Properties, LP,[1] in late June, 1998. The Mitchells were shown two apartment complexes: the racially homogenous Tuscany Apartments building in Pittsburgh, Pennsylvania, and the racially heterogeneous Carnegie Apartments building, located in Carnegie, Pennsylvania. Both complexes are owned by P&R Properties. The Mitchells chose to rent an apartment in the Tuscany building, and on June 30, 1998, signed a one-year lease for an apartment in that building. They also paid the required application fee, first month's rent, and the appropriate security deposit. That same day, Ms. Cellone gave them keys to the Tuscany apartment, as well as an electronic access card for the building, and a garage door opener.

The next day, the Mitchells received a telephone call from Ms. Cellone, asking them to reconsider their move into the Tuscany building. From this and subsequent conversations, the Mitchells concluded that, because of their race, they were being steered away from the homogenous Tuscany building toward an apartment in the racially-mixed Carnegie building.[2] The electronic access card given to the Mitchells was subsequently deactivated, preventing them from entering the Tuscany building.

On or about August 11, 1998, the Mitchells filed a complaint with the United States Department of Housing and Urban Development ("HUD"), alleging that the Appellees' actions violated the Fair Housing Act, 42 U.S.C. § 3601 (2003), *et seq.* ("FHA"). The Secretary of HUD referred the complaint to the Pennsylvania Human Relations Commission ("PHRC"), as required by 42 U.S.C § 3610(f). PHRC initiated an investigation and determined there was probable cause to credit the Mitchells' allegations. Both the Mitchells

---

[1] We shall refer to appellees P&R Properties, Inc. and P&R Properties, LP collectively as simply "P&R Properties."

[2] According to the facts alleged in the complaint filed with the Pennsylvania Human Rights Commission, the Mitchells were told that tenants in the Tuscany building might be intimidated by the race and size of Mr. Mitchell (referring to him as a "black Arnold Schwarzanegger"), and that the Mitchells would be more comfortable in the Carnegie building since some of the tenants in that building were African-American. See Appendix to Brief of Appellants, pg. 25.

and Appellees elected under the Pennsylvania Human Relations Act, 43 P.S. § 959(d.1) (Supp. 2004), to have the complaint heard in the Commonwealth Court of Pennsylvania (as opposed to an administrative hearing), where PHRC would litigate on behalf of the Mitchells.[3] A trial date was set for sometime in February, 2002. Dissatisfied with the denial of their motion to intervene, the Mitchells moved to discontinue the action before the Commonwealth Court on or about November 29, 2001, which was granted.

On or about October 29, 2001, the Mitchells filed this federal complaint in the United States District Court for the Western District of Pennsylvania, alleging both that the Appellees' actions violated the FHA and infringed upon the federal property rights guaranteed to them as minority citizens pursuant to 42 U.S.C. § 1982. The Appellees filed a Motion to Dismiss, which was granted on November 17, 2003. *See Mitchell, et al. v. Cellone, et al.*, 291 F. Supp.2d 368 (W.D. Pa. 2003). In that Order, the District Court concluded that it was without jurisdiction to hear the FHA claim, and that the section 1982 claim had been filed beyond the two-year statute of limitations period. The Mitchells moved for reconsideration of this ruling under Fed. R. Civ. P. 59(e), but

---

[3] The Mitchells sought to intervene in their own right before the Commonwealth Court, but that court denied their application in an unreported memorandum opinion.

their motion was denied. This appeal followed.

## II.

The Mitchells filed a timely Notice of Appeal pursuant to Fed. R. App. P. 4. We have appellate jurisdiction over this final order of the District Court pursuant to 28 U.S.C. § 1291. Where issues of statutory interpretation are implicated, we will exercise plenary review over a district court's decision. *See U.S. v. Thayer*, 201 F.3d 214, 219 (3d Cir. 1999).

## III.

Because the District Court's decision was based exclusively on the wording of 42 U.S.C. § 3613, we will begin, as in all statutory interpretation cases, with the language of that statute. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S. Ct. 941, 151 L. Ed. 2d 908 (2002).

> An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such

3

discriminatory housing practice or breach.

*See* 42 U.S.C. § 3613(a)(1) (2003).

It is not within the province of this or any other court to interpret what needs no interpretation. *See Watt v. Alaska*, 451 U.S. 259, 266, 101 S. Ct. 1673, 68 L. Ed. 2d 80 n.9 (1981) (noting that, while the plain-meaning rule is not absolute, "the words used, even in their literal sense, are the primary, and ordinarily most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else"). If a statute is plain in its terms, we shall apply the legislature's instructions as long as they are constitutional. *See Caminetti v. United States*, 242 U.S. 470, 485, 37 S. Ct. 192, 61 L. Ed. 442 (1917) ("It is elementary that the meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms."). Our consideration of a statute must be in its entirety–we will not confine our interpretation to a single section, nor will we ignore the legislative scheme of which a particular provision is part where the wording of a statute is not certain. *See U.S. Nat. Bank of Oregon v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 455, 113 S. Ct. 2173, 124 L. Ed. 2d 402 (1993) ("[The courts] must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and

policy); *see also N.J. Transit Policemen's Benev. Ass'n Local 304 v. New Jersey Transit Corp.*, 806 F.2d 451, 453 (3d. Cir. 1986) ("In seeking to discern Congressional intent from the legislative text, a court must be mindful of the statute's object and policy and must read the disputed provision in the context of the entire statute and the provisions of related statutes.").

The dispute between the parties has focused on the enforcement procedure available for those alleging violations of the FHA. Enforcement is accomplished in two ways that are relevant here: administrative enforcement under 42 U.S.C. § 3610, and private enforcement under section 3613.[4] Under section 3610, an aggrieved person may file a complaint with the Secretary of HUD alleging a discriminatory housing practice. By its terms, section 3610 requires the Secretary to refer a housing complaint to a certified state public agency (if one exists), which will shoulder the responsibility for investigation and, if warranted, prosecution of a housing discrimination claim. *See* 42 U.S.C. § 3610 (2003). Alternatively, section 3613 allows for a civil cause of action in either State or Federal court within two years[5] after any

---

[4] A third option, enforcement by the Attorney General, is authorized by 42 U.S.C. § 3614.

[5] This two-year statute of limitations is tolled during the time an administrative

4

alleged housing discrimination, whether or not an administrative complaint has been filed under section 3610. *See* 42 U.S.C. § 3613(a)(2) (2003) ("An aggrieved person may commence a civil action . . . *whether or not* a complaint has been filed under section 3610(a) of this title and without regard to the status of any such complaint. . . .") (emphasis added). The only limitation on this private avenue of enforcement is that an aggrieved person may not initiate a private suit if administrative enforcement has been activated and such enforcement has led to the commencement of an administrative hearing on the record. *See* 42 U.S.C. § 3613(a)(3) (2003). As we read the statute, the plain language of sections 3610 and 3613 state that a dual enforcement scheme exists that allows an aggrieved party to pursue both private and administrative enforcement until such time as either avenue has achieved resolution of the claim.

Our reading of section 3613 is bolstered by the FHA's legislative history. Congress enacted the FHA following the urban unrest of the mid-1960s. The FHA, in its original form, provided for a clear national policy against discrimination in housing, but only provided for private enforcement. Twenty years later, Congress concluded that a primary weakness of the FHA was the limited means of enforcing it. *See* House Report (Judiciary Committee), Fair Housing

Amendments Act of 1988, Pub. L. No. 100-430, 1998 U.S.C.C.A.N. 2173, 2177.[6] Simply put, those most affected by racial discrimination in housing were primarily low income minorities who did not have the resources to privately enforce the FHA, at least not on a scale sufficient to achieve the government's goal of eradicating housing discrimination. As such, the one-hundredth Congress moved to strengthen the FHA through the 1988 amendments. *See generally* Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102 Stat 1619 (2003) ("FHAA"). One of the declared purposes of the FHAA was to alleviate the burden placed on private individuals and fair housing organizations who, prior to amendment, shouldered primary enforcement responsibility. One of the key modifications made to the FHA was the addition of section 3610, the administrative enforcement mechanism. It was envisioned that this administrative mechanism would become the primary means of enforcing FHA claims, and that it would be an alternative to the private right of action that had been traditionally available. *See* House Report (Judiciary Committee) at 2178. This history demonstrates to our satisfaction that Congress envisioned that a complainant could sue through HUD and its state commission counterparts *or* initiate litigation privately: the choice of one alternative would not foreclose the other

---

proceeding is pending. *See* 42 U.S.C. § 3613(a)(1)(B).

[6] No Senate report was submitted with this legislation.

5

avenue of redress. *See* House Report (Judiciary Committee) at 2197 ("Dismissal by the Secretary [of an administrative complaint] does not preclude an aggrieved person from filing a civil action under [section 3613], but indicates the end of the Secretary's involvement with that complaint."). Changes made to other provisions of the FHA bear this out: the Committee noted that the amendment made to 42 U.S.C. § 3612(f) required *"cessation of administrative proceedings at the commencement* of a trial brought by the same aggrieved person challenging the same alleged discriminatory housing practice . . . this is intended to prevent multiple adjudication of the same alleged discriminatory housing practice." *See Id.* at 2198 (emphasis added); *see also generally* 42 U.S.C. § 3612 (2003). Moreover, the Committee report stated that "an aggrieved person is not required to exhaust the administrative process before filing a civil action . . . the administrative proceeding [is to] be a primary, *but not exclusive*, method for persons aggrieved by discriminatory housing practices to seek redress." *See Id.* at 2200 (emphasis added). While under 42 U.S.C. § 3612(f), a complainant cannot pursue administrative proceedings once trial has begun in a federal court suit, there is nothing to prevent him from pursuing both approaches until that time. The statements of the House Judiciary Committee, when coupled with Title VIII's goal of ending discrimination in housing, support a finding that the methods of FHA enforcement should be construed broadly by the courts.

The Appellees would have us read the conjunction "or" in section 3613(a)(1) as preventing an aggrieved party from bringing suit in federal court if an administrative complaint resulted in any connection whatsoever with state court. This is an interpretation we cannot accept, as it twists the clear language of sections 3610 and 3613, and ignores the policies and goals articulated in the legislative history of the FHA and its subsequent amendments. We cannot and will not distort section 3613 based simply upon this restrictive reading of the conjunction "or."

Turning to the specific facts of this case, we conclude that the Mitchells' actions fell within the enforcement scenario envisioned by the Congress when it enacted, and later amended, the FHA. Administrative enforcement of the FHA was initiated by their complaint to the Secretary of HUD, as authorized by section 3610(a). The Secretary thereinafter referred the complaint to the PHRC (the certified state agency), per section 3610(f). From that point forward, all activity with regard to the Mitchells' FHA claim was handled through PHRC, in accordance with 43 P.S. § 959 (1991 & Supp. 2004).[7] The Mitchells were given the option to have their complaint prosecuted in either an internal administrative hearing, or in an action prosecuted by the PHRC in

---

[7] 43 P.S. § 959 is the Pennsylvania counterpart to FHA § 3610's administrative enforcement scheme.

Commonwealth Court, pursuant to 43 P.S. § 959(d.1) (Supp. 2004),[8] and all parties

---

[8] Subsection d.1 reads, in relevant part:

> When notice of hearing is given as set forth in subsection (d) and an election procedure is required by the Fair Housing Act, either party may elect to have the claim asserted in the complaint decided in a civil action brought under the original jurisdiction of Commonwealth Court. The written notice of the Commission shall be sent to all parties and will inform them of their right to take civil action. An election must be made within twenty days after receipt of the notice of hearing. A party making this election shall notify the Commission and all other parties. If an election for civil action is made by either party, the Commission shall, within thirty days from the date of election, commence and maintain a civil action on behalf of the complainant provided, however, that, whenever the Attorney General signs and files the complaint pursuant to subsection (a), the Attorney

chose to proceed judicially before the Commonwealth Court. The civil litigation commenced on behalf of the Mitchells by PHRC was, as we see it, in furtherance of the administrative complaint they originally filed with HUD under section 3610, and hence part of the administrative enforcement mechanism. We cannot conclude this was a separate, private enforcement action by the Mitchells, as the Appellees insist. The Mitchells therefore never exercised their option to bring a private suit in state or federal court under section 3613 until they filed the present action on or about October 29, 2001. We find nothing discordant between the FHA enforcement scheme envisioned by Congress and the manner in which the Mitchells chose to proceed with their discrimination claim. Therefore, we conclude that the District Court was in error when it found that it lacked jurisdiction to hear the Mitchells' case.

## IV.

Finally, we note that the Mitchells' section 1982 claim was not substantively argued in their brief before us. Where an appellant presents an issue in his statement of issues raised on appeal, but not in the argument section of his brief, he has "abandoned and waived that issue on

---

> General shall, within thirty days from the date of election, commence and maintain a civil action on behalf of the complainant.

7

appeal." *Travitz v. Northeast Dep't ILGWU Health & Welfare Fund,* 13 F.3d 704, 711 (3d Cir. 1994). Here, the Mitchells reference section 1982 twice in their issue statement, but fail to articulate in their argument section why the court below was incorrect when it dismissed this claim. As such, we conclude that this issue has been waived.

## V.

For the foregoing reasons, we reverse the District Court with regard to its dismissal of the Mitchells' FHA claim and remand this case for further proceedings. We deem the issue of the District Court's dismissal of the Mitchells' section 1982 claim to have been waived.