Sharon R. MITCHELL; Augustine Lopriore; Thomas M. Bowman; Patricia A. Christy; Venair M. Crutchfield; Eric V. Desiderio; Kevin Gallagher; Theodore W. Horne; Anita Jackson; Barry M. Johnson; Margaret A. Kane; Joseph M. Mellon, Sr.; Lorenzo North; David E. O'Hara; Steven Piotrowicz; Marion L. Preston; Steve Przpioski; Wesley K. Schlueter; Eugene E. Smith; Daina E. Stanford; Roselle Tribble

v.

CITY OF PHILADELPHIA; Mayor Edward G. Rendell, City of Philadelphia; Managing Director Joseph C. Certaine; Personnel Director Linda Seyda; Finance Director Ben Hayllar; District Council No. 33, AFSCME.

No. 08–4230.

United States Court of Appeals, Third Circuit.

Argued May 28, 2009.

Filed: Aug. 31, 2009.

William J. Young (argued), National Right to Work Legal Defense Foundation, Springfield, VA, for Appellants.

Kelly S. Diffily, Eleanor N. Ewing (argued), City of Philadelphia Law Dep't, Philadelphia, PA, for Appellees City of Philadelphia, Edward G. Rendell, Joseph Certaine, Linda Seyda, and Ben Hayllar.

Samuel L. Spear (argued), Spear, Wilderman, Borish, Endy, Spear & Runckel, Philadelphia, PA, for Appellee District Council No. 33.

Before: FISHER, CHAGARES, and COWEN, Circuit Judges.

## OPINION OF THE COURT

CHAGARES, Circuit Judge.

This appeal presents several challenges to District Council 33's ("DC 33") collection of fees from City of Philadelphia ("City") employees who are not members of the DC 33 union but who are represented by that union for collective bargaining purposes. We will affirm the District Court's judgment in all respects.

## I.

Because we write solely for the benefit of the parties, we will recite only the essential facts.

DC 33 is the branch of the International American Federation of State, County, and Municipal Employees ("AFSCME") that represents City employees for collective bargaining purposes. DC 33 is affiliated with 14 local unions ("locals"), and each employee is assigned to one local. Though each employee is represented by DC 33 for collective-bargaining purposes, some employees choose not to become members of the union, which, along with its affiliates, engages in political lobbying and ideological activity separate from collective bargaining. Employees who opt out of union membership ("non-members") do not pay full union dues. They pay a so-called "fair share" fee: the percentage of the full union fee that corresponds to expenses incurred for collective-bargaining-related activities only ("chargeable" expenses).

In December 1997, DC 33 sent each non-member a notice breaking down the fair share fee set to take effect in July 1998. Each non-member was given a detailed breakdown of AFSCME's chargeable expenses. Each non-member also was given a detailed breakdown of DC 33's chargeable expenses. But rather than be given a detailed breakdown of the chargeable expenses of *his or her particular local,* each non-member was given a detailed breakdown of the chargeable expenses *aggregated across all the locals.* The fair share fee was the sum of the pro-rata shares of each of these three amounts.

DC 33 continued to collect fair share fees at the January 1998 rate until September 2000, when it issued another notice. That notice, again aggregating local expenses, explained the breakdown of the fair share fee that should have taken effect in July 1998 and the fair share fee that

should have taken effect in July 1999. In January 2001, aggregating local expenses once again, DC 33 issued a notice breaking down the fair share fee that should have taken effect in July 2000. The July 1998 rate was less than what the non-members were actually charged, but the July 1999 rate and July 2000 rate were more. By May 2001, DC 33 had refunded each non-member those differences.[1]

DC 33 relies primarily on one individual, Vernon Person, to calculate the fair share fee and prepare the notice. Person's wife fell ill in late 1998, and he stopped working in order to care for her. He was not able to resume his DC 33 responsibilities until January 2000. This is why DC 33 did not issue any notices between December 1997 and September 2000.

Some of the non-members filed a federal class-action complaint against DC 33, the City, and various City officials, pursuant to 42 U.S.C. § 1983, alleging that they failed to comply with the constitutional requirements for collecting fair share fees imposed by the Supreme Court in *Chicago Teachers Union, Local No. 1 v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). The non-members argued that DC 33 had failed to provide advance notice of the fair share fees it ended up extracting between January 1998 and September 2000, and that the late notices it did provide did not contain an audited breakdown of expenses that was detailed enough to allow each non-member to determine whether the local portion of his or her fair share fee was proper. They demanded total disgorgement of all the fees that DC 33 had collected (notwithstanding the refunds), arguing in part that such relief was awardable as punitive damages for DC 33's knowing failure to issue *Hudson* notices while Person was away from work.

On cross-motions for summary judgment, the District Court held that DC 33 had violated *Hudson* by failing to provide advance notices. But it also held that the notices that eventually were provided were sufficiently detailed. It held that the correct measure of damages was actual damages—the portion of the fair share fee collected that was attributable to non-chargeable expenses—and scheduled a bench trial on that issue. At trial, the District Court allowed DC 33 to call witnesses who were not identified as potential witnesses in DC 33's pre-trial submissions and to introduce exhibits not listed in those submissions. It also allowed DC 33 to designate Person as an expert witness despite DC 33's failure to submit a written report concerning the opinions DC 33 anticipated him to offer, and the factual basis for those opinions.

After trial, the District Court determined that DC 33 had carried its burden of proving chargeability of (among other items) the portion of the fair share fee attributable to AFSCME's "assistance to affiliates" fee, which supplies AFSCME with funds to assist its locals on an as-needed basis with collective-bargaining issues that may arise from time to time; and DC 33's and each local's personnel expenses.

The non-members then filed this appeal.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

This appeal presents five issues: (1) whether a fair share notice that provides an audited breakdown of a non-member's pro-rata share of the aggregate expenses

---

1. Thus the refund, like the fee originally collected, was based upon the aggregate chargeable expenses of all the locals, *not* the charge-able expenses of the particular local to which the non-member receiving the refund belonged.

of all DC 33 locals—rather than the expenses of that non-member's particular local—satisfies *Hudson*'s financial disclosure requirement; (2) whether the remedy for knowingly collecting a fair share fee without providing advance notice, in violation of *Hudson*, is return of the entire fee collected (as restitution or punitive damages); (3) whether the District Court's failure to enforce the Federal Rules of Civil Procedure, Eastern District of Pennsylvania Local Rules, and the District Court's own announced procedures warrants a new damages trial; (4) whether DC 33 carried its burden of proving chargeability of AFSCME's "assistance to affiliates" fee at the damages trial; and (5) whether DC 33 carried its burden of proving chargeability of its and the locals' personnel costs at the damages trial. We will address each issue in turn.

### III.

▮ The non-members argue that DC 33's fair share notices violate *Hudson*'s financial-disclosure requirement because they provide an audited breakdown only of the locals' aggregate chargeable expenses, not of each non-member's particular local's chargeable expenses. The adequacy of a fair share fee notice under *Hudson* is an issue of law, so we engage in plenary review of the District Court's ruling. *Walden v. Georgia–Pacific Corp.*, 126 F.3d 506, 522 (3d Cir.1997).

A fair share fee notice must provide non-members with "sufficient information to gauge the propriety" of the fee. *Hudson*, 475 U.S. at 306, 106 S.Ct. 1066. "[A]dequate disclosure surely would include the major categories of expenses, as well as verification by an independent auditor." *Id.* at 307 n. 18, 106 S.Ct. 1066. But, "absolute precision" in the form of an "exhaustive and detailed list" of all expenditures is not required. *Id.*

Providing sufficient information to gauge the propriety of the local portion of the fair share fee has presented a recurring problem. For example, in *Hohe v. Casey*, 956 F.2d 399 (3d Cir.1992), an AFSCME district council (comparable to DC 33) provided a *Hudson* notice that, in describing the local portion of the fair share fee, disclosed only the aggregate amount of the locals' expenditures, and stated that the percentage of those expenditures that were chargeable to non-members was at least as great as the percentage of the district council's expenditures that were chargeable. *Id.* We held that this disclosure was inadequate. *Id.* True, because non-members were charged their pro-rata share of this percentage of the district council's expenses, the disclosure accurately revealed how the fee was calculated. *Id.* But it did not reveal enough to allow non-members to determine whether that fee was proper. *Id.* For example,

> the notice ... did not disclose the affiliated locals' "major categories of expenses" nor was there any assertion that the locals' categories of expenses mirrored those of [the district council]. Moreover, although the notice stated that [the district council] had assumed that affiliated locals' percentage of chargeable expenses was at least as great as its own, the notice offered no reason or explanation why [the district council] was justified in making this assumption.

*Id.* (quoting *Hudson*, 475 U.S. at 307 n. 18, 106 S.Ct. 1066). We did not squarely hold that disclosure of the aggregate expenses of all the locals would have satisfied *Hudson*, although that was the argument made by the non-member appellants—who were represented by the same organization that represents the non-member appellants in this case—in whose favor we ruled. *See* Non-members' Br., *Hohe v. Casey*, 956 F.2d 399 (3d Cir.1992) (No. 91–5002), 1991

WL 11245162 ("Adequate disclosure under *Hudson* could simply include major categories of expenses for chargeable purposes, aggregated for all locals....").

We indirectly endorsed this aggregate approach in the later case of *Otto v. Pa. State Educ. Ass'n–NEA*, 330 F.3d 125 (3d Cir.2003). There, we held that all the locals' expenses must undergo an independent audit. *Id.* But, we stated that this audit may be performed on an aggregate (rather than local-by-local) basis: "unions without the financial wherewithal to afford the *Hudson*-required audit might choose to enter into combinations with other small unions to achieve necessary economies of scale." *Id.* at 135. And it would make little sense to allow local unions to aggregate their expenses for an audit but then force them to disaggregate their expenses before the *Hudson* disclosures are made.

Our approval of aggregate audits in *Otto*, coupled with the Supreme Court's holding in *Hudson* that absolute precision in computing the fair share fee (and therefore in disclosing how that fee was computed) is not required, leads us to conclude that the late *Hudson* notices provided an adequate financial disclosure.

## IV.

█ The non-members argue that the District Court erred in declining to order DC 33 to return the entire fee it collected (as a form of restitution or punitive damages) while knowingly failing to provide advance notice, in violation of *Hudson*. They argue that it was improper for the District Court to award only nominal damages on the ground that DC 33 had already refunded any overcharges.

Because restitution is an equitable remedy, we review the District Court's decision not to award restitution for an abuse of discretion. *See Voest–Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d 206, 211 (3d Cir.1990). We review the District Court's decision not to award punitive damages for an abuse of discretion, as well. *See Cooper Indus. v. Leatherman Tool Grp.*, 532 U.S. 424, 433, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001).

Whether restitution is appropriate depends upon whether it is necessary to prevent unjust enrichment or to deter future similar misconduct. *See Wessel v. City of Albuquerque*, 463 F.3d 1138, 1147 (10th Cir.2006). Punitive damages in § 1983 cases are available where the defendants have acted with a "reckless or callous disregard of, or indifference to, the rights and safety of others." *Keenan v. City of Phila.*, 983 F.2d 459, 469–70 (3d Cir.1992). Punitive damages are to be "reserved for special circumstances," *id.* at 470 (quoting *Savarese v. Agriss*, 883 F.2d 1194, 1205 (3d Cir.1989)), that is, for "cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief," *id.* (quoting *Cochetti v. Desmond*, 572 F.2d 102, 105–06 (3d Cir.1978)). The Supreme Court and this Court have also addressed the issue of disgorgement in the fair share fee context, in particular. The Supreme Court in *Hudson* and this Court in *Hohe* have cautioned against depriving a union of "fees to which it is unquestionably entitled." 475 U.S. at 310, 106 S.Ct. 1066, 956 F.2d at 406. By definition, a union is "unquestionably entitled" to the portion of the fair share fee collected properly attributable to chargeable expenses. *See, e.g., Wessel v. City of Albuquerque*, 299 F.3d 1186, 1194–95 (10th Cir.2002) ("A union's violation of procedural requirements for the collection of fair share fees does not entitle nonmembers to a 'free ride' but only to a refund of the portion of the amounts collected that exceed what could be properly charged." (citing *Prescott v. County of El Dorado*, 177 F.3d 1102, 1109 (9th Cir.1999); *Weaver v. Univ. of Cincinnati*, 970 F.2d 1523, 1533 (6th Cir.1992);

*Hohe,* 956 F.2d at 415–16; *Gilpin v. AFSCME,* 875 F.2d 1310, 1314–16 (7th Cir.1989))).

The District Court acted well within its discretion in concluding that DC 33's and the City's actions were not willful and malicious, but merely were the result of an excusable, one-time lapse of an otherwise dedicated employee. For this same reason, ordering full restitution would not have increased DC 33's and the City's likelihood of future compliance. Thus, the District Court did not abuse its discretion in declining to order full disgorgement via punitive damages or equitable restitution.

## V.

■ The non-members argue that the District Court's failure to enforce Federal Rule of Civil Procedure 26(a) (because it allowed Person to testify as an expert without making certain required disclosures), Eastern District of Pennsylvania Local Rule 16. 1, and the District Judge's own announced procedures (because it allowed DC 33 to call other witnesses and present exhibits not expressly identified in DC 33's pre-trial submissions) warrants a new damages trial. We review the District Court's application of these Federal and local rules, to which objections were made during trial, for abuse of discretion. *See Rinehimer v. Cemcolift, Inc.,* 292 F.3d 375, 382–83 (3d Cir.2002); *United States v. Eleven Vehicles,* 200 F.3d 203, 215 (3d Cir.2000).

Federal Rule of Civil Procedure 37(c)(1) provides that expert testimony used at trial despite a failure to make the disclosures required by Rule 26(a) need not be disallowed if the failure is "harmless." Eastern District of Pennsylvania Local Rule 16.1(a) provides that "variations from the pre-trial procedures established by the Rule may be ordered by the assigned judge to fit the circumstances of a particular case." Violation of a Local Rule justifies a new trial

only where the complaining party has suffered unfair prejudice. *See Eleven Vehicles,* 200 F.3d at 215. Further, District Judges have inherent authority to depart from their own pre-trial procedures. *See In re School Asbestos Litig.,* 977 F.2d 764, 793–94 (3d Cir.1992). Violation of such pre-trial procedure, like violation of a Local Rule, justifies a new trial only where the complaining party has suffered unfair prejudice. *See Eleven Vehicles,* 200 F.3d at 215.

The District Court's failure to enforce Federal Rule of Civil Procedure 26(a) was not an abuse of discretion. The non-members suffered no prejudice from the District Court's decision to allow Person to testify as an expert. They deposed him two years before trial, had access to the materials he used to form his opinions for even longer than that, and were given the opportunity to cross-examine him at length at trial. Neither was its decision to allow DC 33 to present witnesses and exhibits not identified in DC 33's pre-trial submissions. The District Court was authorized to relax the pre-trial witness and exhibit identification requirement by the very text of Local Rule 16.1. Finally, the District Court did not abuse its discretion in varying from its own pre-trial procedures, because it had inherent authority to do just that. In any event, the non-members have not endeavored to explain how any of these actions prejudiced their ability to participate effectively at trial.

## VI.

■ The non-members argue that DC 33 failed to carry its burden of proving chargeability of AFSCME's "assistance to affiliates" fee at the damages trial. We engage in clearly-erroneous review of the District Court's findings of fact, *Gordon v. Lewistown Hosp.,* 423 F.3d 184, 201 (3d Cir.2005), and plenary review of its conclu-

sions of law, *Blasband v. Rales*, 971 F.2d 1034, 1040 (3d Cir.1992).

A non-member properly may be charged for his "pro-rata share of the costs associated with otherwise chargeable activities of [his local's] state and national affiliates, even if those activities were not performed for the direct benefit of [his local]." *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 524, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991). Thus, expenses incurred by a parent union (like AFSCME) may properly be chargeable to a non-member even if those expenses are for services that do not have a "direct and tangible impact" on his local. *Id.* Particularly relevant here, a fee "which contributes to the pool of resources potentially available to the local is assessed for the [local's] protection" is chargeable, "even if it is not actually expended on that [local] in any particular membership year." *Id.* at 523, 111 S.Ct. 1950.

As for the quantum of evidence needed to sustain such a showing, all that is required is "*some indication* that the payment is for services that may ultimately inure to the benefit of the members of the local union by virtue of [its] membership in the parent organization." *Id.* at 524, 111 S.Ct. 1950 (emphasis added). The union must prove this "indication" by a preponderance of the evidence. *Ellis v. Bhd. Ry., Airline & S.S. Clerks*, 466 U.S. 435, 457 n. 15, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984). That is, the union must prove that such an "indication" more likely than not exists.

The District Court did not err in holding that the evidence presented at trial cleared this very low hurdle. For example, AFSCME's accounting manager testified that it provides a wide variety of support to the locals:

> They receive all types of support and it depends if [AFSCME] thinks that we should be doing some of the support or if the individual affiliate calls in and requests a particular kind of support.

Maybe they need their budget analyzed, maybe they need some help in their contract negotiations, maybe there's an organizing drive that [AFSCME] says that they want to produce so they will be the ones that will say, you know, we need to, you know, work in conjunction with this. But this is what we do.

Joint Appendix 588. The District Court was entitled to find that this testimony, more likely than not, provided "some indication" that the "assistance to affiliates" fee is for services that "may ultimately inure" to the locals' benefit.

## VII.

■ The non-members argue that DC 33 failed to carry its burden of proving the chargeability of its and the locals' personnel costs at the damages trial. We engage in clearly-erroneous review of the District Court's findings of fact, *Gordon*, 423 F.3d at 201, and plenary review of its conclusions of law, *Blasband*, 971 F.2d at 1040.

In general, a union expense is chargeable if it is

> necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues. Under this standard, objecting employees may be compelled to pay their fair share of not only the direct costs of negotiating and administering a collective-bargaining contract and of settling grievances and disputes, but also the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the duties of the union as exclusive representative of the employees in the bargaining unit.

*Ellis*, 466 U.S. at 448, 104 S.Ct. 1883. DC 33 must prove chargeability by a preponderance of the evidence. *Id.* at 457 n. 15, 104 S.Ct. 1883.

First, the non-members argue that the District Court impermissibly placed the burden on them to disprove chargeability (rather than on the union to prove chargeability). The District Court did this, they contend, by allowing DC 33 to take advantage of Person's treating all time as chargeable, by default, and then deducting provably non-chargeable time from this total to arrive at a final figure. We confronted this argument in *Hohe*, and we rejected it. *See* 956 F.2d at 414–15.

■ Second, the non-members argue that the District Court erred in allowing DC 33 to carry its burden by presenting evidence other than "contemporaneously-recorded hard data concerning its expenses and employees' time...." Nonmembers' Br. at 51. But the non-members point us to no court of appeals authority standing for this proposition. True, such evidence may be more credible than after-the-fact interviews with employees (of the sort Person did here), but that does not mean that the District Court was foreclosed from considering other types of proof (even if less reliable). *Cf.* Fed. R.Evid. 611(a) ("The court shall exercise reasonable control over the mode ... of ... presenting evidence....").[2]

## VIII.

For the reasons given above, we will affirm the District Court's judgment in all respects.

---

2. The non-members, in their reply brief, make detailed hearsay challenges to some of DC 33's evidence. But, in their opening brief, they do nothing more than mention the word "hearsay" several times. They do not appear even to have cited the Federal Rules of Evidence in the relevant portion of the argument section of their opening brief. Therefore, these challenges are waived. *See, e.g., Mitchell v. Cellone,* 389 F.3d 86, 92 (3d Cir.2004) (holding that appellant waives claim that is not "substantively argued" in opening brief).